UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
Asheville Division

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| BON WORTH, INC., | ) | Case No. 19-10317 |
| | ) | |
| Debtor. | ) | |
| | ) | |

**DEBTOR'S MOTION FOR ENTRY OF AN ORDER (I) AUTHORIZING THE DEBTOR TO CONTINUE PAYROLL AND PAYROLL RELATED PRACTICES INCLUDING PAYMENT OR REIMBURSEMENT OF CERTAIN PREPETITION (A) WAGES, SALARIES, VACATION PAY, AND OTHER COMPENSATION AND AMOUNTS WITHHELD FROM SUCH COMPENSATION; (B) EMPLOYEE HEALTH BENEFITS AND SIMILAR BENEFITS; (C) REIMBURSEMENT OF EMPLOYEE EXPENSES; AND (D) PAYMENT OF ALL COSTS INCIDENT THERETO AND (II) AUTHORIZING APPLICABLE BANKS AND OTHER FINANCIAL INSTITUTIONS TO RECEIVE, PROCESS, HONOR, AND PAY CERTAIN CHECKS AND TRANSFERS**

Bon Worth, Inc. ("Bon Worth", the "Debtor", or the "Company"), debtor and debtor-in-possession in the above-captioned case, hereby moves (the "Motion") the Court for entry of an order (the "Order"), pursuant to sections 105(a), 363(b), 507(a)(4), and 507(a)(5) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 6003 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), (i) authorizing the Debtor, as applicable, to continue payroll and payroll related practices including payment to or on behalf of current or former employees of certain prepetition (a) wages, salaries, vacation pay, and other compensation and amounts withheld from such compensation; (b) payment of health insurance, life insurance, and other insurance premiums for employees' benefit and similar benefits, (c) reimbursement of employee expenses; and (d) all costs and expenses incident to the foregoing (collectively, the "Employee Obligations"); and (ii) authorizing applicable banks and other

1

financial institutions to receive, process, honor, and pay all prepetition checks and transfers drawn on the Debtor's accounts to satisfy the Employee Obligations. In support of this Motion, the Debtor respectfully states as follows:

## JURISDICTION

1. The Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue of these proceedings and the Motion in this Court is proper under 28 U.S.C. § 1408.

2. The statutory bases for the relief requested herein are sections 105(a), 363(b), 507(a)(4) and 507(a)(5) of the Bankruptcy Code and Rule 6003 of the Bankruptcy Rules.

## BACKGROUND

3. On August 16, 2019 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (the "Chapter 11 Case"). The Debtor is operating its businesses and managing its properties as debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No creditors' committee, trustee, or examiner has been appointed in this case.

## RELIEF REQUESTED

4. The Debtor employs a total of approximately 215 people, including employees at its Hendersonville, North Carolina corporate headquarters and at stores throughout the country. Employees include sales associates, store managers and regional managers, as well as corporate staff and management. The Debtor employs approximately 200 hourly Employees and 15 salaried Employees. In the months prior to the Petition Date, the Debtor eliminated employee positions at its corporate offices and its stores throughout the country as a result of the prepetition closure of retail stores.

5. The Debtor's current and former employees are collectively referred to herein as "Employees" or, in the singular, "Employee."

6. The Employees perform a variety of functions for the Debtor, including, without limitation, sales and customer service at the Debtor's retail stores, distribution of product to the retail stores, and generally sustaining the Debtor's business operations through various administrative, accounting, supervisory and managerial functions. The Employees' knowledge and handling of operational tasks are essential to the Debtor's efforts to preserve and maximize the value of the Debtor's business and assets for the benefit of creditors and other stakeholders in this Chapter 11 Case. The Debtor's prior history of profitable business operations depended on the efforts of their Employees, and the Debtor have instituted payroll and benefit plans designed to reward Employees and keep them motivated toward the Debtor's recapturing its former success. Without the continued, dedicated service of the Employees, the Debtor's goal to maximize the value of the Debtor's estate for the benefit of all constituencies will not be possible.

7. To minimize the personal hardship that the Employees will suffer and the immediate, and irreparable harm to the Debtor's business that will result if the Employee Obligations are not paid when due or as expected, as well as to maintain morale and assure continuity in the Debtor's workforce and operations, the Debtor seeks authority to continue to pay the Employee Obligations, regardless of whether such Employee Obligations arose prepetition or post-petition, as set forth herein to, or on behalf of, Employees, including all costs and expenses incident thereto.

8. The Debtor also requests that the Court authorize applicable banks and other financial institutions to receive, process, honor, and pay all prepetition checks and transfers

drawn on the Debtor's accounts to satisfy the Employee Obligations.

I.  **Authority for Debtor to Continue Payroll and Payroll Related Practices**

   A.  **Salaries, Wages, Paid Time Off, Payroll Taxes, and other Withholdings**

9. <u>Salary and Wages.</u> The Debtor issues payroll to Employees on a bi-weekly basis, every other Friday. The Debtor has paid their respective Employees for services rendered through August 3, 2019. These payments were funded to the Debtor's payroll processor, Paylocity, prior to the Petition Date and should have been received by the Employees prior to the time the Petition was filed. As of the Petition Date, the Debtor has accrued but unpaid wage obligations of approximately $112,705.80 for the Employees, covering the period after August 3, 2019. In addition, the Debtor has withheld certain Employee contributions in accordance with the Debtor's 401(k) Plan.

10. <u>Paid Vacation/Personal Time.</u> The Debtor offers paid vacation ("Vacation"), personal time off ("PTO") and certain paid holidays to eligible Employees. On December 31st of each year, all Vacation time not used are lost. Eight (8) hours of PTO time may be carried forward from year to year. Upon termination with proper notice, it has been the Debtor's practice to pay accrued but unused Vacation to the terminated Employee but not to pay accrued but unused PTO unless required by law.

11. After an Employee has completed three (3) full fiscal months of active, full-time employment, the Employee becomes eligible to begin accruing PTO. Full-time employees are eligible to accrue vacation, up to a designated number of days per year.

12. In addition, after three (3) months of full-time employment, Employees are eligible to be paid for six national holidays: New Year's Day, Memorial Day, Fourth of July, Labor Day, Thanksgiving, and Christmas.

4

HTPL: 738194v1

13. The Debtor seeks authority to continue to allow Employees to take paid time off in accordance with the Debtor's prepetition practices and procedures, regardless of whether such time was earned pre- or post petition.

14. The Debtor estimates that, as of the Petition Date, obligations to Employees for accrued but unused Vacation total approximately $41,463.00.

15. As of the Petition Date, the Debtor does not believe any Employee is owed accrued but unpaid salary and wages and accrued but unused Vacation exceeding the $12,850.00 priority claim limit provided under section 507(a)(4) of the Bankruptcy Code.

16. By this Motion, as set forth above, the Debtor seeks authority to pay, in the ordinary course of the Debtor's businesses, each individual Employee his or her accrued but unpaid salary, wages, overtime pay, unused Vacation and commissions, if any, as of the Petition Date. Further, the Debtor request that any payroll service provider including, without limitation, Paylocity, be authorized to continue any prepetition payroll funding process as such process existed prior to the Petition Date, including initiation of ACH or other electronic transfer withdrawals from the Debtor's bank accounts.

17. <u>Employee Withholdings.</u> The Debtor deducts certain amounts from Employees' paychecks and are obligated to remit such withholdings on behalf of the Employees including: (a) federal, state and local income taxes and the individual Employee's portion of FICA; (b) deductions for health insurance plan premiums for which the Employees are responsible; (c) deductions for court-ordered child support, garnishment, and bankruptcy-related obligations; (d) deductions requested by individual Employees for deposit into such Employee's credit union, savings, or other financial institution accounts; and (f) other deductions, if any, requested by individual Employees, including for the Debtor's 401(k) Plan. The Debtor seeks authority to

remit the sums withheld prepetition that the Debtor is obligated to remit to such third-party payees but have not yet remitted to the appropriate payees.

  B. **Employee Health, Medical and Disability Benefits, Life Insurance**

  18. Health Insurance Plan. An Employee and the Employee's family are eligible to participate in the Debtor's sponsored Health Insurance Benefit Program after the Employee has completed sixty (60) days of active employment. The Debtor offer a health insurance plan through Cigna Health and Life Insurance Company ("Cigna"). Approximately forty-eight (48) Employees participate in the Cigna plan. As of the Petition Date, unpaid and accrued health insurance premiums are approximately $21,092.47.

  19. The Debtor may also insure premiums that accrued prepetition. The Debtor may also have certain amounts that have been collected and otherwise pay any prepetition insurance premiums or obligations and not yet deposited. The Debtor requests authority to remit those funds collected prepetition as appropriate in their ordinary course of business.

  20. Life Insurance. All full-time Employees are automatically enrolled in the Group Life Insurance Plan. Coverage is effective after the Employee completes sixty (60) days of employment. The Group Life Insurance Plan provides life insurance coverage equal to $25,000. The Group Life Insurance provider is Life Insurance Company of North America. Under the Group Life Insurance Plan, the Debtor contributes 100% of the premium costs for participating Employee. The Debtor's average monthly expense for this benefit in the year prior to the Petition Date was $507.39.

  21. Accidental Death & Dismemberment. All full-time Employees are automatically enrolled in an accidental death and dismemberment plan administered by Life Insurance Company of North America (the "Basic AD&D Plan"). The Basic AD&D Plan is third-party

6

insured, meaning that the Debtor is only responsible for the payment of premiums under the plan. Coverage is effective after the Employee completes sixty (60) days of employment. The Debtor contributes 100% of the premium costs for Employees participating in the Basic AD&D Plan. Typically, the total monthly employer premiums for Employees' participation in the Basic AD&D Plan are approximately $438.00.

22. By this Motion, the Debtor seeks authority to pay any and all prepetition and post-petition obligations related to the Health Insurance Benefit Program, the Group Life Insurance Plan, the Life Insurance Plan and the Basic AD&D Plan, and any and all other similar employee benefit plans which the Debtor had in place as of the Petition Date.

      C.    **Reimbursement of Employee Costs and Expenses**

23. The Debtor owes certain of its Employees for reimbursement of business-related expenses, including travel, meals, and similar charges. The Debtor provides a corporate Shell credit card for a very limited number of Employees for business-related expenses. Employees with Shell credit cards are not responsible for any business-related expenses; however, at times these employees may incur incidental personal expenses, for which they have the obligation to reimburse the Debtor. Any business-related expenses that have been charged to the Shell credit card are paid for by the Debtor directly to Shell. Employees may also incur business expenses that may have been paid using cash or an Employee's personal credit card depending on the circumstances. Employees submit expenses for reimbursement, regardless of the original method of payment, on a weekly basis. After appropriate review and approval, expenses are reimbursed to Employees on behalf of each Employee, based on the original method of payment. Sales associates and store managers may incur substantial business expenses including purchase of store supplies and travel expenses such as hotel charges and

mileage, which the Employee charges to his or her personal credit card and then seeks reimbursement from the Debtor. The Debtor's typical monthly reimbursements for business-related expenses owed to Employees are approximately $2,000.00 per month.

24. The Debtor believes that the reimbursement of business expenses incurred by Employees is essential to prevent immediate, irreparable harm to the Debtor's business and maintain the good will of the Employees and ensure that Employees are not saddled with expenses incurred on behalf of the Debtor, and therefore request authority to pay any such reimbursements, regardless of whether they are related to prepetition or post-petition periods, in the ordinary course of the Debtor's businesses.

II. **Authority for Banks to Honor and/or Reissue Checks**

25. The Debtor further requests that all applicable banks and other financial institutions be authorized to receive, process, honor and pay any and all checks and transfers drawn on the Debtor's accounts, pursuant to any order granting relief requested by this Motion, whether such checks were presented before, or are presented after, the Petition Date.

**BASIS FOR RELIEF REQUESTED**

A. **Pursuant to Sections 105(a) and 363(b) of the Bankruptcy Code and Bankruptcy Rule 6003, the Debtor Should be Authorized to Honor the Employee Obligations**

26. Section 105(a) of the Bankruptcy Code provides, in pertinent part, that a court may "issue any order, process, or judgment that is necessary to carry out the provisions of this title." A court's use of its equitable power to "authorize payment of a prepetition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept." *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (citing *NLRB v. Bildisco &*

*Bildisco*, 465 U.S. 513, 528 (1984)). "Under 11 U.S.C. § 105, the court can permit pre-plan payment of a prepetition obligation when essential to the continued operation of the debtor." In re NVR L.P., 147 B.R. 126, 127 (Bankr. E.D. Va. 1992) (citing *In re: Ionosphere Clubs*, 98 B.R. at 177); see *also In re Just for Feet, Inc.*, 242 B.R. 821, 826 (D. Del. 1999) (holding that the court had equitable power under 11 U.S.C. § 105 to authorize payment of prepetition claims). In addition, section 363(b)(1) authorizes a debtor in possession to use property of the estate other than in the ordinary course of business after notice and a hearing. *See, e.g., In re Hendricks Furniture Group, LLC*, Case No. 09-50790 (Bankr. W.D.N.C. 2009); *In re: Garlock sealing Technologies LLC*, Case No. 10-31607 (Bankr. W.D.N.C. 2010); *In re: Tanner Companies, LLC*, Case No. 17-40029 (Bankr. W.D.N.C.).

27.  Similarly, the relief requested is warranted under Bankruptcy Rule 6003, which provides that payment of prepetition debts can be authorized to the extent it is necessary "to avoid immediate and irreparable harm." Fed. R. Bankr. P. 6003. Any delay in honoring the Employee Obligations would immediately and irreparably harm the Debtor's business due to the damage to the Employees' morale and result in significant hardship to the Employees, at the very time when their dedication and cooperation is most critical. If the relief requested in this Motion is not granted, the Debtor faces the imminent risk that its operations may be severely impaired. At this critical stage, the Debtor cannot risk the substantial disruption to its business operations that would inevitably attend any decline in Employee morale attributable to the Debtor's failure to honor the Employee Obligations. The Debtor's continued operation at this time is required to preserve and maximize the value of the Debtor's estate and, as such, the Employees' dedication and cooperation remain essential.

**B.    The Employees' Claims for Salaries, Wages, Other Compensation, and Benefits Have Priority Status under the Bankruptcy Code**

28. Section 507(a)(4) of the Bankruptcy Code provides priority status for, among other things:

> allowed unsecured claims but only to the extent of $12,850 for each individual or corporation, as the case may be, earned within 180 days before the date of the filing of the petition or the date of the cessation of the debtor's business, whichever occurs first, for —(A) wages or salaries or commissions, including vacation, severance, and sick leave pay earned by an individual . . .

11 U.S.C. § 507(a)(4). Under this section, the claims of employees for compensation earned within 180 days prior to the petition date including, without limitation, wages, salaries, bonuses, sales commissions, vacation pay and sick pay for individuals, have priority to the extent of $12,850 per individual.

29. The Debtor respectfully submits that the amounts owed (or that may be owed) to the Employees with respect to certain of the Employee Obligations subject to section 507(a)(4) of the Bankruptcy Code are within the statutory priority amount and would be required to be paid as priority claims against the Debtor. Accordingly, the Debtor should be authorized to pay these obligations in the ordinary course of its business.

30. Likewise, under section 507(a)(5) of the Bankruptcy Code, each of the Employees may be granted a priority claim for:

> contributions to an employee benefit plan –
>
> (A) arising from services rendered within 180 days before the date of the filing of the petition or the date of the cessation of the debtor's business, whichever occurs first; but only
>
> (B) for each such plan, to the extent of -
>
> > (i) the number of employees covered by each such plan multiplied by $12,850; less
> >
> > (ii) The aggregate amount paid to such employees under paragraph (3) of this subsection [regarding certain

10

>wages, salaries or commissions], plus the aggregate amount paid by the estate on behalf of such employees to any other employee benefit plan.

31. Because the amounts owed (or that may be owed) to the Employees with respect to certain of the Employee Obligations subject to section 507(a)(5) of the Bankruptcy Code would be required to be paid as priority claims against the Debtor, the Debtor should also be authorized to render payment in the ordinary course with respect thereto.

### C. Funds Held in Trust Are Not Property of the Debtor's Estates

32. Section 541(d) of the Bankruptcy Code excludes "property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest." 11 U.S.C. § 541(d). It is well established under section 541(d) of the Bankruptcy Code that taxes collected on behalf of the taxing authorities are not property of the estate. *See Begier v. Internal Revenue Service*, 496 U.S. 53, 59 (1990) (holding that taxes such as excise taxes, FICA taxes and withholding taxes are property held by the debtor in trust for another and, as such, do not constitute property of the estate).

33. To avoid serious disruption to the Debtor's efforts to preserve and maximize the value of its estate for the benefit of creditors and other stakeholders during these Chapter 11 Cases that could result from the non-payment of any withholding taxes, this Court should authorize the Debtor to remit amounts withheld prepetition, but not remitted on account of federal and state payroll taxes and FICA to the applicable taxing authorities. These withholdings are held in trust for the benefit of the appropriate federal, state or local taxing authority for the Employees on behalf of whom such payment is being made. Because these withholdings are held in trust on behalf of others and thus do not constitute property of the Debtor's estate, the remittance of the amounts at issue will not adversely affect the Debtor's estate or its creditors and is warranted.

34. Further, many federal, state and local taxing authorities impose personal liability on the officers and directors of entities responsible for collecting taxes from employees to the extent any such taxes are collected but not remitted. Accordingly, if these amounts remain unpaid, there is a risk that the Debtor's officers and directors may be subject to lawsuits on account of any such nonpayment during the pendency of these Chapter 11 Cases. Any such legal ramifications would constitute a significant distraction for officers and directors at a time when their focus on preserving and maximizing the value of these estates is essential.

D. **Continuation of Benefit and Compensation Plans Post-Petition is Critical to the Debtor's Prospects for a Successful Sale of Substantially All of Its Assets**

35. The Debtor's goal in this case is to maximize value for all creditors by selling substantially all of its assets for the highest and best price practicable. In order to achieve this goal, however, the Debtor believes it must operate as successfully as it can while in this Chapter 11 Case. As in any business, the Debtor's success is highly dependent on the morale and satisfaction of its Employees. In turn, Employee morale is directly correlated to the benefits and incentives offered by the employer. Consequently, the Debtor considers the maintenance of all prepetition Employee benefit plans to be an essential component to a successful post-petition sale of substantially all of its assets.

**REQUEST FOR WAIVER OF STAY**

36. To the extent that the relief sought in the Motion constitutes a use of property under Section 363(b) of the Bankruptcy Code, the Debtor seeks a waiver of the fourteen-day stay under Bankruptcy Rule 6004(h). Further, to the extent applicable, the Debtor requests that the Court find that the provisions of Bankruptcy Rule 6003 are satisfied. As explained herein,

12

the relief requested in this Motion is immediately necessary for the Debtor to be able to continue to operate its business and preserve the value of the estate.

## NOTICE

37. Notice of this Motion has been given to the following parties: (i) the holders of the twenty largest general unsecured claims against the Debtor; (ii) the Office of the United States Bankruptcy Administrator for the Western District of North Carolina; and (iii) counsel for Crossroads Funding I, LLC, holder of the Debtor's prepetition senior secured debt; and (iv) counsel for Merchant Coterie, Inc., the largest vendor to the Debtor. The Debtor submits that, in light of the nature of the relief requested, no other or further notice need be given.

WHEREFORE, the Debtor respectfully requests the Court enter an Order, substantially in the form attached hereto as Exhibit A, (i) authorizing, but not directing, the Debtor to pay the Employee Obligations, except as otherwise set forth herein, in accordance with their prepetition policies and practices including, without limitation: (a) wages, salaries, vacation pay, and other compensation and amounts withheld from such compensation; (b) payment of health insurance, life insurance, and other insurance premiums for employees' benefit and similar benefits, (c) reimbursement of employee expenses; and (d) all costs and expenses incident to the foregoing; (ii) authorizing and directing applicable banks and other financial institutions to receive, process, honor, and pay all prepetition checks and transfers drawn on the Debtor's accounts to satisfy the Employee Obligations; and (iii) granting the Debtor such other and further relief as is just and proper.

HTPL: 738194v1

This the 16th day of August, 2019.

                HORACK, TALLEY, PHARR & LOWNDES, P.A.

                <u>/s/ Paul R. Baynard</u>
                Paul R. Baynard
                N.C. State Bar No. 15769
                Amy P. Hunt
                N.C. State Bar No. 34166
                301 S. College Street, Ste. 2600
                Charlotte, NC 28202-6006
                Telephone: 704-377-2500
                Facsimile: 704-714-7935
                E-mail: pbaynard@horacktalley.com
                E-mail: ahunt@horacktalley.com

                *Proposed Counsel to the Debtor*

# EXHIBIT A

# PROPOSED ORDER

**UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**Asheville Division**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| BON WORTH, INC., | ) | Case No. 19-10317 |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |

**ORDER GRANTING DEBTOR'S MOTION FOR ENTRY OF AN ORDER (I) AUTHORIZING THE DEBTOR TO CONTINUE PAYROLL AND PAYROLL RELATED PRACTICES INCLUDING PAYMENT OR REIMBURSEMENT OF CERTAIN PREPETITION (A) WAGES, SALARIES, VACATION PAY. AND OTHER COMPENSATION AND AMOUNTS WITHHELD FROM SUCH COMPENSATION; (B) EMPLOYEE HEALTH BENEFITS AND SIMILAR BENEFITS; (C) REIMBURSEMENT OF EMPLOYEE EXPENSES; AND (D) PAYMENT OF ALL COSTS INCIDENT THERETO AND (II) AUTHORIZING APPLICABLE BANKS AND OTHER FINANCIAL INSTITUTIONS TO RECEIVE, PROCESS, HONOR. AND PAY CERTAIN <u>CHECKS AND TRANSFERS</u>**

Upon review of the motion (the "Motion") of Bon Worth, Inc. ("Bon Worth" or the "Company") debtor and debtor-possession in the above-captioned case, for entry of an order, pursuant to sections 105(a), 363(b), 507(a)(4), and 507(a)(5) of title 11 of the United States Code and Rule 6003 of the Federal Rules of Bankruptcy Procedure, authorizing the (i) Debtor to continue payroll and payroll related practices including payment of certain prepetition (a) wages, salaries, vacation pay and other compensation and amounts withheld from such

HTPL: 738194v1

compensation; (b) employee medical plan, life insurance and accidental death and dismemberment premiums, and similar benefits; (c) reimbursement of employee expenses; and (d) all costs and expenses incident to the foregoing (collectively, the "Employee Obligations"); and (ii) authorizing and directing applicable banks and other financial institutions to receive, process, honor and pay all prepetition checks and transfers drawn on the Debtor's account to satisfy payroll obligations; and due and sufficient notice of the Motion having been given; and it appearing that no other or further notice need be provided; and upon the record therein; and it appearing that the relief requested by the Motion is in the best interest of the Debtor's estate, its creditors and other parties in interest, and after due deliberation and sufficient cause appearing therefore;

IT IS HEREBY ORDERED THAT:

1. The Motion is GRANTED.

2. The requirements of Rule 6003 of the Bankruptcy Rules are satisfied and the relief requested is necessary to avoid immediate and irreparable harm.

3. Notwithstanding Rule 6004(h) of the Bankruptcy Rules, this Order shall be effective and enforceable immediately upon entry hereof.

4. As set forth following this paragraph, the Debtor is hereby authorized and empowered, but not directed, (i) to pay, in accordance with the policies and practices established prior to the Petition Date, to or on behalf of the Employees all Employee Obligations, regardless of whether such Employee Obligations arose before or after the Petition Date; (ii) to perform and honor all other obligations, practices and policies in accordance with the foregoing; and (iii) to pay all taxes, tax deposits and processing fees in connection with payments made or other benefits provided pursuant to this Order. The Debtor is authorized, without limitation to:

  (a)  pay, in the ordinary course of the Debtor's business, each Employee his or her accrued but unpaid salary, wages, and overtime pay, as applicable, as of the Petition Date;

  (b)  remit all amounts withheld from Employee paychecks prepetition but not yet remitted in connection with health insurance plans, taxes, and withholdings;

  (c)  pay any and all prepetition and post-petition obligations related to the health plan, the life insurance plan, the accidental death and dismemberment plan and any, and all other similar employee benefit plans which the Debtor had in place as of the Petition Date;

  (d)  continue allowing their Employees to take paid time off, in accordance with the Debtor's prepetition practices and procedures;

  (e)  continue observing paid holidays in the ordinary course of their businesses;

  (f)  pay Employees for reimbursement of business-related expenses, travel, meals, and similar charges, regardless of whether charges are related to prepetition or post-petition periods, in the ordinary course of the Debtor's businesses; and

  (g)  pay all costs incident to the payment of the Employee Obligations.

  5. All banks are hereby authorized and directed to honor all employee wage and salary checks and all fund transfer requests drawn on the Debtor's accounts to honor all employee expense reimbursement checks that are presented for payment or fund transfer requests that relate to accrued and unpaid prepetition obligations of the Debtor to Employees regardless of whether or not the checks or transfer requests were issued prior to or after the Petition Date, to the extent that sufficient funds are on deposit or the Debtor arrange to have sufficient funds deposited in the applicable account.

  6. All banks are hereby authorized to rely upon the Debtor's representation that a particular payment is authorized under this Order.

  7. The Debtor is authorized to reissue checks to cover amounts owing on any checks

HTPL: 738194v1

covered by this Order that have been dishonored and to reimburse Employees for any resulting charges.

8. Nothing in the Motion or this Order, nor the Debtor's payment of claims pursuant to this Order, shall be deemed or construed: (a) as an admission as to the validity of any claim against the Debtor; (b) as a waiver of the Debtor's rights to dispute any claim; (c) to waive or release any right, claim, defense or counterclaim of the Debtor or its estate, or to estop the Debtor or its estate from asserting any right, claim, defense or counterclaim; (d) as an approval or assumption of any agreement, contract or lease, pursuant to section 365 of the Bankruptcy Code; or (e) as an admission that any obligation is entitled to administrative expense priority or any such contract or agreement is executory or unexpired for purposes of section 365 of the Bankruptcy Code or otherwise.

9. The Debtor is authorized and empowered to take such actions as may be necessary and appropriate to implement the terms of this Order.

10. This Court shall retain jurisdiction with respect to all matters relating to the interpretation or implementation of this Order.

11. Pursuant to Local Rule 9013-1(f), any party shall be entitled to request a hearing or request that the Court reconsider entry of this Order by filing a motion for reconsideration within fourteen (14) days of service of this Order.

This Order has been signed electronically. The judge's signature and the court's seal appear at the top of the Order.     United States Bankruptcy Court

HTPL: 738194v1