## EXHIBIT 3

## RATIFICATION AGREEMENT

HTPL: 740676v3

<u>RATIFICATION AND AMENDMENT AGREEMENT</u>

This RATIFICATION AND AMENDMENT AGREEMENT (this "**Ratification Agreement**"), dated as of _____, 2019, is by and between BON WORTH, INC. as debtor and debtor-in-possession ("**Bon Worth**" or "**Company**"), and CROSSROADS FUNDING I, LLC, in its capacity as lender ("**Crossroads**").

W̲I̲T̲N̲E̲S̲S̲E̲T̲H:

WHEREAS, Bon Worth has commenced a case under chapter 11 of the Bankruptcy Code (as defined herein) in the Bankruptcy Court (as defined herein) and Bon Worth has retained possession of its assets and is authorized under the Bankruptcy Code to continue the operation of its businesses as a debtor-in-possession;

WHEREAS, prior to the commencement of the Chapter 11 Case (as defined herein), Crossroads made loans and advances and provided other financial or credit accommodations to Bon Worth secured by substantially all assets of Bon Worth as set forth in the Loan Documents (as defined herein);

WHEREAS, Bon Worth is requesting that the Bankruptcy Court approve post-petition financing pursuant to which Crossroads may make senior post-petition loans and advances, and provide other financial accommodations, to Bon Worth secured by substantially all of Bon Worth's assets as set forth in the Financing Order and the Loan Documents (as defined herein);

WHEREAS, Bon Worth has requested that Crossroads make post-petition loans and advances and provide other financial or credit accommodations to Bon Worth and make certain amendments to the Credit Agreement (as defined herein) and the other Loan Documents (as defined herein), and Crossroads is willing to do so, subject to the terms and conditions contained herein; and

NOW, THEREFORE, in consideration of the foregoing, the mutual covenants and agreements contained herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Crossroads and Bon Worth mutually covenant, warrant and agree as follows:

1. **DEFINITIONS.**

    **1.1** <u>Additional Definitions</u>. As used herein, the following terms shall have the respective meanings given to them below and the Credit Agreement and the other Loan Documents shall be deemed and are hereby amended to include, in addition and not in limitation, each of the following definitions:

    (a) "**Bankruptcy Court**" means the United States Bankruptcy Court for the Western District of North Carolina.

    (b) "**Bankruptcy Code**" means the United States Bankruptcy Code, being Title 11 of the United States Code as enacted in 1978, as the same has heretofore been or

HTPL: 739735v5

may hereafter be amended, recodified, modified or supplemented, together with all rules, regulations and interpretations thereunder or related thereto.

(c)  **"Bankruptcy Events"** means the commencement of the Chapter 11 Case, and/or the occurrence and/or existence of any defaults under agreements that have no effect under the terms of the Bankruptcy Code as a result of the commencement the Chapter 11 Case.

(d)  **"Budget"** means the thirteen (13) week budget delivered to Crossroads in accordance with Section 5.3 of the Ratification Agreement (a summary of such initial Budget is attached to the Ratification Agreement as <u>Exhibit A</u>, in form and substance approved by Crossroads), together with any subsequent or amended budgets thereto delivered to Crossroads, in form and substance satisfactory to Crossroads (each such subsequent budget, a "Budget"), in accordance with the terms and conditions of the Ratification Agreement.

(e)  **"Carve-Out"** shall have the meaning set forth in the Financing Order.

(f)  **"Chapter 11 Case"** means the case under Chapter 11 of the Bankruptcy Code commenced by Bon Worth which is pending in the Bankruptcy Court.

(g)  **"Committee"** means any official committee of unsecured creditors in the Chapter 11 Case pursuant to Section 1102 of the Bankruptcy Code.

(h)  **"Credit Agreement"** means the Loan and Security Agreement dated as of February 21, 2019, by and between Bon Worth and Crossroads, as assignee of Crossroads Financing, LLC.

(i)  **"Debtor"** means Bon Worth as debtor and debtor-in-possession in the Chapter 11 Case.

(j)  **"Financing Order"** means the Interim Financing Order, the Permanent Financing Order and such other orders relating thereto or authorizing the granting of credit by Crossroads to Bon Worth on an emergency, interim or permanent basis pursuant to Section 364 of the Bankruptcy Code as may be issued or entered by the Bankruptcy Court in the Chapter 11 Case.

(k)  **"Interim Financing Order"** means, the order of the Bankruptcy Court entered in the Chapter 11 Case after an interim hearing, in the form attached hereto as <u>Exhibit B</u> and/or otherwise in form and substance satisfactory to Crossroads, together with all extension, modifications, and amendments thereto consented to by Crossroads, which, among other matters but not by way of limitation, authorizing, on an interim basis, Bon Worth to execute and perform under the terms of the Loan Documents, as amended and supplemented by the terms and conditions of the Ratification Agreement.

(l)  **"Loan Documents"** means, the Credit Agreement, each Loan Document, and each other agreement, instrument, or documents entered into by any party related thereto or executed in connection therewith or any of the Obligations including this Ratification Agreement, as each of the same now exists or may hereafter be amended from time to time.

HTPL: 739735v5

(m)    "**Loan Parties**" means Bon Worth and the Guarantors.

(n)    "**Merchant Coterie**" means Merchant Coterie, Inc., or an affiliate thereof.

(o)    "**Merchant Coterie Agreement**" means that certain agreement between the Debtor and Merchant Coterie pursuant to which Merchant Coterie will sell inventory and/or make advances to the Debtor and be granted certain claims and liens in connection therewith.

(p)    "**Merchant Coterie Subordination Agreement**" means that subordination agreement entered into between Crossroads and Merchant Coterie with respect to the claims and liens that may be granted to Merchant Coterie under the Merchant Coterie Agreement, substantially in the form annexed hereto as Exhibit C.

(q)    "**Payment in Full**" or "**Paid in Full**" means (a) all of the liquidated Obligations have been paid in full in cash; (b) in the case of any contingent Obligations, including without limitation any payments that have been provisionally credited to the Obligations and any continuing obligations (contingent or otherwise) that Crossroads shall have furnished Crossroads with cash collateral or an indemnification from a person, and pursuant to terms and conditions, in each case which are satisfactory to Crossroads in its reasonable discretion in all respects, and; (c) all other liabilities to Crossroads in respect of matters or circumstances known to Crossroads at the time which are reasonably expected to result in any actual loss, cost, damage or expense (including reasonable attorneys' fees and legal expenses) to Crossroads for which Crossroads is entitled to indemnification by Bon Worth under the terms of the any Loan Document, Bon Worth shall have furnished Crossroads with cash collateral in an amount satisfactory to Crossroads in its reasonable discretion.

(r)    "**Permanent Financing Order**" means, the order of the Bankruptcy Court entered in the Chapter 11 Case after a final hearing of the Bankruptcy Court, which order shall be in form and substance satisfactory to Crossroads and from which no appeal or motion to reconsider has been filed, together with all extensions, modifications and amendments thereto, consented to by Crossroads, which among other matters, but not by way of limitation, authorizing Bon Worth to obtain credit, incur the Post-Petition Obligations, and grant Liens therefor and granting super-priority expense claims to Crossroads with respect to all obligations due Crossroads, subject to no priority claim or administrative expenses of the Chapter 11 Case or any other entity (other than the Pre-Petition Priority Liens and the Carve-Out).

(s)    "**Petition Date**" means the date of the commencement of the Chapter 11 Case.

(t)    "**Post-Petition Collateral**" means, collectively, all now existing and hereafter acquired real and personal property of Bon Worth's estate, wherever located (but excluding the prepetition retainer Bon Worth's bankruptcy counsel or financial advisor received), of any kind, nature or description, including any such property in which a lien is granted to Crossroads pursuant to the Loan Documents, the Financing Order or any other order entered or issued by the Bankruptcy Court, and shall include, without limitation:

3

HTPL: 739735v5

(i)    all of the Pre-Petition Collateral; (ii) all Accounts; (iii) all general intangibles, including, without limitation, all intellectual property; (iv) all goods, including, without limitation, Inventory and Equipment (as such terms are defined in the UCC); (v) all real property and fixtures; (vi) all chattel paper, including, without limitation, all tangible and electronic chattel paper; (vii) all instruments, including, without limitation, all promissory notes; (viii) documents and all credit card sales drafts, credit card sales slips or charge slips or receipts, and other forms of store receipts; (ix) deposit accounts; (x) all letters of credit, banker's acceptances and similar instruments and including all letter-of-credit rights; (xi) all supporting obligations and all present and future liens, security interests, rights, remedies, title and interest in, to and in respect of accounts receivable and other Collateral, including (A) rights and remedies under or relating to guaranties, contracts of suretyship, letters of credit and credit and other insurance related to the Collateral, (B) rights of stoppage in transit, replevin, repossession, reclamation and other rights and remedies of an unpaid vendor, lienor or secured party, (C) goods described in invoices, documents, contracts or instruments with respect to, or otherwise representing or evidencing, accounts receivables or other Collateral, including returned, repossessed and reclaimed goods, and (D) deposits by and property of account debtors or other persons securing the obligations of account debtors; (xii) all (A) investment property (including securities, whether certificated or uncertificated, securities accounts, security entitlements, commodity contracts or commodity accounts) and (B) monies, credit balances, deposits and other property of Bon Worth now or hereafter held or received by or in transit to Crossroads or at any depository or other institution from or for the account of Bon Worth, whether for safekeeping, pledge, custody, transmission, collection or otherwise; (xiii) all commercial tort claims, including, without limitation, those identified by Bon Worth in its filings in the Chapter 11 Case; (xiv) all records; and (xv) to the extent not covered by the foregoing clauses, all products and proceeds of the foregoing, in any form, including insurance proceeds and all claims against third parties for loss or damage to or destruction of or other involuntary conversion of any kind or nature of any or all of the other Collateral.

(ii)    For the avoidance of doubt, Post-Petition Collateral shall not include any avoidance actions arising under sections 544, 545, 546, 547, 548, 549, 550 or any similar provisions of the Bankruptcy Code including recoveries under 11 U.S.C. § 506(c) or any carve out under 11 U.S.C. § 552, except to the extent permitted under the final Financing Order.

(u)    **"Post-Petition Obligations"** means all Obligations (as defined in the Credit Agreement) of Bon Worth arising on and after the Petition Date and whether arising on or after the conversion or dismissal of the Chapter 11 Case, or before, during and after the confirmation of any plan of reorganization in the Chapter 11 Case, and whether arising under or related to this Ratification Agreement, the Credit Agreement, the other Loan Documents, a Financing Order, by operation of law or otherwise, and whether incurred by Bon Worth as principal, surety, endorser, guarantor or otherwise and including, without limitation, all principal, interest, financing charges, letter of credit fees, unused line fees, servicing fees, line increase fees, debtor-in-possession facility fees, early termination fees, other fees, commissions, costs, expenses and attorneys', accountants' and consultants' fees and expenses incurred in connection with any of the foregoing. For the avoidance of doubt, all such fees shall be reasonable, and the Post-Petition Obligations shall include that portion of the Pre-Petition Indebtedness, which has been "rolled-up" from time to time as provided in the Financing Order.

HTPL: 739735v5

(v)    **"Pre-Petition Collateral"** means, collectively, (i) all "Collateral" as such term is defined in the Credit Agreement as in effect immediately prior to the Petition Date and (ii) all other security for the Pre-Petition Indebtedness as provided in the Credit Agreement and the other Loan Documents immediately prior to the Petition Date.

(w)    **"Pre-Petition Indebtedness"** means all Obligations (as such term is defined in the Credit Agreement) arising at any time before the Petition Date.

(x)    **"Pre-Petition Priority Liens"** means, collectively, the Liens permitted by the Loan Documents, to the extent any such permitted Liens are valid, enforceable, properly perfected, non-avoidable and senior in priority to the Liens securing the Pre-Petition Indebtedness as of the Petition Date.

(y)    **"Ratification Agreement"** means this Ratification and Amendment Agreement, dated as of the **[August __, 2019]**, between Bon Worth and Crossroads, as the same may hereafter be amended, modified, supplemented, extended, renewed, restated or replaced.

(z)    **"Ratification Closing Date"** means the date on which the Bankruptcy Court enters the Financing Order.

### 1.2    AMENDMENTS TO DEFINITIONS.

(a)    <u>Collateral</u>.  All references to the term "Collateral" in the Credit Agreement or the other Loan Documents, or any other term referring to the security for the Pre-Petition Indebtedness, shall be deemed, and each such reference is hereby amended to mean, collectively, the Pre-Petition Collateral and the Post-Petition Collateral.

(b)    <u>Bon Worth</u>.  All references to Bon Worth, including, without limitation, to the term "Borrower" or "Borrowers" in the Credit Agreement or the other Loan Documents shall be deemed, and each such reference is hereby amended, to mean and include Bon Worth as defined herein, and its successors and assigns (including any trustee or other fiduciary hereafter appointed as its legal representative or with respect to the property of the estate of such corporation whether under Chapter 11 of the Bankruptcy Code or any subsequent Chapter 7 case and its successor upon conclusion of the Chapter 11 Case of such corporation).

(c)    <u>Loan Documents</u>.  All references to the term "Loan Documents" in the Credit Agreement or any of the other Loan Documents shall be deemed, and each such reference is hereby amended, to include, in addition and not in limitation, this Ratification Agreement and all of the Loan Documents, as ratified, assumed and adopted by Bon Worth pursuant to the terms of the Ratification Agreement, as amended and supplemented thereby, and the Financing Order, as each of the same now exists or may hereafter be amended, modified, supplemented, extended, renewed, restated or replaced.

(d)    <u>Credit Agreement</u>.  All references to the term "Agreement" in the Credit Agreement or the term "Credit Agreement" in the other Loan Documents shall be deemed, and each such reference is hereby amended, to mean the Credit Agreement (as defined in the

5

Ratification Agreement), and as ratified, assumed and adopted by Bon Worth pursuant to the terms hereof and the Financing Order.

(e)    Advances.  All references to the term "Advances" or "Obligations" in the Credit Agreement, this Ratification Agreement or the other Loan Documents shall be deemed, and each such reference is hereby amended, to mean both the Pre-Petition Indebtedness and the Post-Petition Obligations.

(f)    Initial Term.  The definition of "Initial Term" set forth in the Credit Agreement is hereby deleted in its entirety and the following substituted therefor:

"Initial Term" shall mean the earliest to occur of (a) February 21, 2020, (b) thirty (30) days after the entry of the Interim Financing Order if the Permanent Financing Order has not been entered prior to the expiration of such thirty (30) day period (or such longer period if consented to in writing by Crossroads), (c) substantial consummation (as defined in Section 1101 of the Bankruptcy Code), but in any event not later than the effective date of a plan of reorganization filed in the Chapter 11 Case pursuant to an order entered by the Bankruptcy Court, (d) the date the Bankruptcy Court orders the conversion of the bankruptcy case of Debtor to a Chapter 7, (e) the date this Agreement is otherwise terminated for any reason whatsoever pursuant to the terms of this Agreement, (f) subject to the Financing Order, the acceleration of the Obligations or termination of this Agreement hereunder, including without limitation, as a result of the occurrence of an Event of Default, (g) the closing of the sale of all or substantially all of the Debtor's assets provided, however, that for the purpose of determining the "Contractual Termination Date," the Initial Term shall be February 21, 2020."

(g)    Reserves.  The definition of "Availability Reserves" set forth in the Credit Agreement is hereby amended and restated in its entirety as follows:

"Availability Reserves" means, as of any date of determination, such amounts that Crossroads establishes in its reasonable discretion (from the perspective of a secured, asset based lender making advances of the type provided by the Credit Agreement, including as amended pursuant to the Ratification Agreement) from time to time to reduce the amount of Advances that would otherwise be available to Bon Worth under the Borrowing Base (a) to reflect events, conditions, contingencies or risks which affect the assets, business or prospects of Bon Worth (including, without limitation, all administrative expense claims and priority claims that are required to be paid in the Chapter 11 Case), or the Collateral or its value, or the enforceability, perfection or priority of Crossroads' security interest in the Collateral, as the term "Collateral" is defined in this Agreement, or (b) to reflect Crossroads' good faith judgment that any collateral report or financial information relating to Bon Worth and furnished to Crossroads may be incomplete, inaccurate or misleading in any material respect."

(h)    Guarantors.  The definition of "Guarantors" set forth in the Credit Agreement is hereby amended and restated in its entirety as follows:

6

"Guarantors" all individuals and entities now or hereafter guaranteeing the Obligations, but not including Validity Guarantees by David Herman and William Red (which Validity Guarantees shall be ratified and confirmed)."

(i)  Key Employees. The definition of "Key Employees" set forth in the Credit Agreement is hereby amended and restated in its entirety as follows:

"Key Employees." David Herman and William Red."

**1.3**  Interpretation.

(a)  For purposes of this Ratification Agreement, unless otherwise defined or amended herein, including, but not limited to, those terms used or defined in the recitals hereto, all terms used herein shall have the respective meanings assigned to such terms in the Credit Agreement, as amended, supplemented or otherwise modified by this Ratification Agreement.

(b)  All terms not specifically defined herein which are defined in the Uniform Commercial Code, as in effect in the State of New York as of the date hereof, shall have the meaning set forth therein, except that the term "Lien" or "lien" shall have the meaning set forth in § 101(37) of the Bankruptcy Code.

**2.  ACKNOWLEDGMENTS.**

**2.1**  Pre-Petition Indebtedness. Bon Worth acknowledges, confirms and agrees that, as of August 3, 2019, Bon Worth was indebted to Crossroads in respect of all Pre-Petition Indebtedness in an aggregate principal amount of not less than $923,468.00 which is unconditionally owing by Bon Worth to Crossroads, without offset, defense or counterclaim of any kind, nature and description whatsoever.

**2.2**  Acknowledgment of Security Interests.  Bon Worth acknowledges, confirms and agrees that Crossroads, has and shall continue to have (a) valid, enforceable and perfected first priority and senior security interests in and liens upon all Pre-Petition Collateral and Post-Petition Collateral, in each case, subject only to the Carve-Out and Pre-Petition Priority Liens.

**2.3**  Binding Effect of Documents. Bon Worth acknowledges, confirms and agrees that the agreements and obligations of Bon Worth contained in the Loan Documents constitute the legal, valid and binding obligations of Bon Worth enforceable against it in accordance with the terms thereof.

**3.  ADOPTION AND RATIFICATION.** Bon Worth ratifies, assumes, adopts and agrees to be bound by all of the Loan Documents, as supplemented and amended by this Ratification Agreement, and in accordance with the Financing Order. Bon Worth ratifies, restates, affirms and confirms all of the terms and conditions of the Loan Documents, as amended and supplemented pursuant hereto and the Financing Order, and Bon Worth, as debtor and debtor-in-

possession, agrees to be fully bound by the terms of the Loan Documents to which Bon Worth is a party.

### 4.    **GRANT OF SECURITY INTEREST**.

As collateral security for the prompt performance, observance and payment in full of all of the Indebtedness (including the Pre-Petition Indebtedness and the Post-Petition Obligations), Bon Worth, as debtor and debtor-in-possession, hereby grants, pledges and assigns to Crossroads, and also confirms, reaffirms and restates the prior grant to Crossroads of, continuing senior priority security interests in and liens upon, and rights of setoff against, all of the Collateral.

### 5.    **ADDITIONAL REPRESENTATIONS, WARRANTIES AND COVENANTS**.

In addition to the representations, warranties and covenants made by Bon Worth to Crossroads, under the Credit Agreement or the other Loan Documents (in each case, for the avoidance of doubt, as amended by or provided in this Ratification Agreement), Bon Worth represents, warrants and covenants to Crossroads the following (which shall survive the execution and delivery of this Ratification Agreement), the truth and accuracy of which, or compliance with, to the extent such compliance does not violate the terms and provisions of the Bankruptcy Code, shall be a continuing condition precedent to the making of Advances  (other than protective advances)  by Crossroads:

**5.1**    Financing Order.  No Loan Party shall seek to have any Financing Order vacated, modified, reversed on appeal, or vacated or modified by any order of the Bankruptcy Court (other than as consented to by Crossroads).

**5.2**    Use of Proceeds.  Notwithstanding anything to the contrary set forth in the Credit Agreement or any other Loan document, during the term of the financing, all Advances and Letters of Credit provided by Crossroads to Bon Worth on and after the Ratification Closing Date pursuant to the Financing Order, the Credit Agreement or otherwise, shall only be used by Bon Worth to the extent (a) provided for in the Budget, (b) the repayment of the Indebtedness, and (c) as authorized by the Bankruptcy Court and consented to by Crossroads in writing.

**5.3**    Budget.

(a)    Bon Worth has prepared and delivered to Crossroads a thirteen (13) week post-petition Budget.  The Budget has been thoroughly reviewed by Bon Worth and its management and sets forth, for the periods covered thereby, projected weekly cash receipts and cash disbursements for each week (each such week ending on Sunday) of the thirteen (13) consecutive week period commencing with the week ending **[August __, 2019]**.  Subsequent thirteen (13) week budgets shall be delivered to Crossroads, in form and substance satisfactory to Crossroads, during the ninth week of the Budget.  Upon approval by Crossroads, such budget shall be deemed to be the Budget for the next thirteen (13) week period.

(b)    Not later than 3:00 p.m. (Pacific time) on the Wednesday of each week commencing with the Wednesday following the first full week ending after the Petition Date, Bon Worth shall furnish to Crossroads a weekly report (the **"Budget Compliance Report"**) that (i) sets forth as of the preceding Sunday of each such week on a cumulative basis from the

8

beginning of the period of time covered by the Budget (each such thirteen week period referred to herein as a "**Measurement Period**"), Bon Worth's actual cash receipts and disbursements for such week, noting therein adverse variances from values set forth for such periods in the Budget, and (ii) an explanation for all such adverse variances greater than ten percent (10%) in any line items or sub-line items, certified by an officer of Bon Worth. Such report/reconciliation shall also note any variances with values set forth in the Budget as of the day of such report/reconciliation.

(c)    Bon Worth acknowledges, confirms and agrees that the following covenants shall be tested pursuant to the Budget Compliance Report for the applicable Measurement Period ending as of each Sunday, with such testing commencing on the Wednesday following the first full week ending after the Petition Date: (i) the actual total cash receipts, including receipts from the Merchant Processor, shall not be less than ninety percent (90%) of the projected total cash receipts set forth in the Budget in respect of such Measurement Period, and (ii) the actual total cash disbursements shall not be more than one hundred and ten percent (110%) of the projected total cash disbursements set forth in the Budget in respect of such Measurement Period.

(d)    Bon Worth hereby confirms, acknowledges and agrees that, unless waived in writing by Crossroads, a failure to maintain the deviations in the Budget in an amount equal to or less than the percentage set forth in Section 5.3(c) hereof shall constitute a material deviation from the Budget and an additional Event of Default (each, a "**Material Budget Deviation**"). Notwithstanding any approval by Crossroads of the Budget or any subsequent or amended Budget(s), Crossroads will not, and shall not be required to, provide any Advances to Bon Worth pursuant to the Budget, but shall only provide any Advances in accordance with the terms and conditions set forth in the Credit Agreement as amended by this Ratification Agreement, the other Loan Documents and the Financing Order. Crossroads is relying upon Bon Worth's delivery of, and compliance with, the Budget in accordance with this Section 5.3 in determining to enter into the post-petition financing arrangements provided for herein.

(e)    Notwithstanding any projected amounts set forth in the Budget relating to the costs and expenses of Crossroads that are reimbursable by Bon Worth or any other amounts owing by Bon Worth to Crossroads (including, without limitation reasonable attorneys and consulting fees and expenses) in accordance with the Credit Agreement and the other Loan Documents, such projections shall not limit, impair, modify or waive Bon Worth's obligation to pay the actual reasonable amounts due to Crossroads in respect of such costs, expenses and other amounts owing to Crossroads in accordance with the Credit Agreement and the other Loan Documents and the actual reasonable amounts paid in respect of such costs, expenses and other amounts other shall not be subject to the variance compliance set forth in Section 5.3(c).

## 6.    **DIP FACILITY FEE**.

Bon Worth shall pay to Crossroads a debtor-in-possession financing facility fee on account of the financing provided by Crossroads to Bon Worth in the Chapter 11 Case, in a total amount of two percent (2%) of the Maximum Amount, which amount shall be fully earned and payable in the Ratification Closing Date (the "**DIP Facility Fee**").

HTPL: 739735v5

7. **AMENDMENTS**.

      **7.1**    <u>Maximum Line of Credit.</u>  The "Maximum Amount" set forth in Section 1.2.56 of the Credit Agreement is hereby amended to delete the reference to "$1,000,000" and substituting "$1,300,000" therefor.  Section 1.2.56 of the Credit Agreement is hereby further amended by adding the following sentence at the end of Section 1.2.56:

> "As a condition to having the Maximum Amount set in the amount of $1.3 million, Crossroads requires that: (i) Merchant Coterie loan not less than $500,000.00 to Bon Worth on a subordinated basis (junior to Crossroads); and (ii) Merchant Coterie deliver goods to Bon Worth in the amounts and at the times set forth in the Budget.  If the conditions set forth in subsections (i) and (ii) of the preceding sentence are not timely met, then the Maximum Amount will be reduced to the amount of $1,000,000.00."

      **7.2**    <u>Application of Payment to Indebtedness</u>.  Section 3.1.3 of the Credit Agreement is hereby amended by adding the following sentence at the end of Section 3.1.3:

> "Notwithstanding anything to the contrary contained in this Agreement or any of the other Loan Documents, Crossroads may, in its discretion, apply any such payments or proceeds <u>first</u>, to the Pre-Petition Indebtedness until such Pre-Petition Indebtedness are paid and satisfied in full and <u>second</u>, to the Post-Petition Obligations until such Post-Petition Obligations are paid and satisfied in full."

      **7.3**    <u>Additional Financial Reporting Requirements</u>.  Section 10.1.4 of the Credit Agreement is hereby amended by adding the following new subsection at the end of such Section:

> "(m) <u>Bankruptcy Reporting</u>.  Bon Worth shall provide Crossroads with copies of all financial reports, schedules and other materials and information at any time furnished by or on behalf of Bon Worth to the Bankruptcy Court or the Bankruptcy Administrator."

      **7.4**    <u>Indebtedness.</u>  Notwithstanding anything to the contrary contained in the Credit Agreement, and with the exception of post-petition financing provided by Merchant Coterie, which is subject to the approval by the Bankruptcy Court, so long as the financing provided by Crossroads to Bon Worth in the Chapter 11 Case is in effect, Bon Worth shall not incur or pay any indebtedness other than in accordance with the court-approved Budget and Merchant Coterie Subordination Agreements.

      **7.5**    <u>Events of Default</u>.  Section 12 of the Credit Agreement is hereby amended by adding the following subsections at the end of such Section:

> "(12.19)    Any of the following occurs:
>
>     (i)    The occurrence of any condition or event which permits Crossroads to exercise any of the remedies set forth in the Financing Order upon any "Event of Default" (as defined in any Financing Order);

HTPL: 739735v5

(ii)     The termination or non-renewal of the Loan Documents as provided for in any Financing Order;

(iii)    Any act, condition or event occurring after the Petition Date that has or could reasonably be expected to have a material adverse effect and it is reasonably foreseeable that an Event of Default would occur as a result of such material adverse change;

(iv)    The conversion of any Chapter 11 Case to a Chapter 7 case under the Bankruptcy Code;

(v)     The dismissal of any Chapter 11 Case or any subsequent Chapter 7 case either voluntarily or involuntarily;

(vi)    The grant or recognition of a lien on or other interest in any property of any Loan Party, other than a lien or encumbrance permitted by any Financing Order, which is superior to or ranks in parity with Crossroads' security interest in or lien upon the Collateral; or

(vii)   The grant of an administrative expense claim in the Chapter 11 Case which is superior to or ranks in parity with the claims and rights of Crossroads (other than administrative expense claims permitted by any Financing Order or the Ratification Agreement to be senior in priority of payment to the Indebtedness);

(viii)  The failure of Bon Worth to comply with any Financing Order or the Ratification Agreement;

(xiv)   Any Financing Order is modified, reversed, vacated or amended by the Bankruptcy Court or on appeal without the prior written consent of Crossroads;

(x)     The appointment of a trustee pursuant to Sections 1104(a)(1) or 1104(a)(2) of the Bankruptcy Code;

(xi)    The appointment of an examiner with special powers pursuant to Section 1104(a) of the Bankruptcy Code;

(xii)   The filing of a plan of reorganization or liquidation which does not provide for payment in full of all Obligations on the effective date thereof in accordance with the terms and conditions contained herein, unless otherwise consented to by Crossroads;

(xiii)  The confirmation of any plan of reorganization or liquidation in the Chapter 11 Case of any Loan Party which does not provide for payment in full of all Obligations on the effective date

11

thereof in accordance with the terms and conditions contained herein, unless otherwise consented to by Crossroads;

(xiv)   The entry of any order permitting, recovery from any portion of the Collateral (or from Crossroads) any costs or expenses of preserving or disposing of the Collateral under section 506(c) or section 552(b) of the Bankruptcy Code (or otherwise);

(xv)   The occurrence of any Material Budget Deviation, as defined in Section 5.3(d) of the Ratification Agreement;

(xvi)   any of the materials previously furnished to Crossroads by Company contain any material misstatements in, or omit to state, any material facts necessary to make the statements therein taken as a whole, in the light of the circumstances under which they were made, or are misleading in any material respect;

(xvii)   the entry of an order by the Bankruptcy Court authorizing the sale of substantially all of the Borrowers assets under section 363 and/or 365 of the Bankruptcy Code (or otherwise) which does not provide for payment in full of the Obligations to Crossroads upon the closing of such sale, unless otherwise consented to by Crossroads"; or

(xviii)   the breach by Merchant Coterie of any term or provision of the Merchant Coterie Subordination Agreement.

**7.6**   Notice.   Section 27.2 of the Credit Agreement is hereby amended by deleting the BORROWER notice section in its entirety and replacing it with the following:

| | |
|---|---|
| **BORROWER:** | **Bon Worth, Inc.** |
| Address: | 40 Francis Rd |
| | Hendersonville, NC 28792 |
| Attention: | David Herman |
| Email: | dherman@bonworth.com |

**7.7**   Governing Law.   Section 30.1 of the Credit Agreement is hereby amended by deleting such Sections in their entirety and replacing them with the following:

"(a)   THE VALIDITY OF THIS AGREEMENT AND THE OTHER LOAN DOCUMENTS (UNLESS EXPRESSLY PROVIDED TO THE CONTRARY IN ANOTHER LOAN DOCUMENT IN RESPECT OF SUCH OTHER LOAN DOCUMENT), THE CONSTRUCTION, INTERPRETATION, AND ENFORCEMENT HEREOF AND THEREOF, AND THE RIGHTS OF THE PARTIES HERETO AND THERETO WITH RESPECT TO ALL MATTERS ARISING HEREUNDER OR THEREUNDER OR RELATED HERETO OR THERETO AS WELL AS ALL

HTPL: 739735v5

CLAIMS, CONTROVERSIES OR DISPUTES ARISING UNDER OR RELATED TO THIS AGREEMENT AND THE OTHER LOAN DOCUMENTS SHALL BE DETERMINED UNDER, GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH THE (i) LAWS OF THE STATE OF NEW YORK WITHOUT REGARD TO THE CONFLICTS OF LAWS PRINCIPLES THEREOF AND (II) TO THE EXTENT APPLICABLE, THE BANKRUPTCY CODE."

(a)     The table of Litigation Matters set forth on Exhibit 7.1 to the Credit Agreement is hereby amended and restated in its entirety as follows:

| Litigation Matters in Excess of $10,000 |
|---|
| Bon Worth will update its litigation schedule in conjunction with the filing in the Bankruptcy Court of its Statement of Financial Affairs and, in particular, its response to Question 7 (Legal Actions or Assignments). |

8.    **RELEASE**.

**8.1**    Release of Pre-Petition Claims.

(a)     Subject to the entry of a Final Financing Order, which shall control in the event of any inconsistency with this Ratification Agreement, in consideration of the agreements of Crossroads contained herein, Bon Worth, on behalf of itself and its respective successors, assigns, and other legal representatives, hereby absolutely, unconditionally and irrevocably releases, remises and forever discharges Crossroads, and Crossroads' respective successors and assigns, and its present and former shareholders, affiliates, subsidiaries, divisions, predecessors, directors, officers, attorneys, employees and other representatives (Crossroads and all such other parties being hereinafter referred to collectively as the "**Releasees**" and individually as a "**Releasee**"), of and from all demands, actions, causes of action, suits, covenants, contracts, controversies, agreements, promises, sums of money, accounts, bills, reckonings, damages and any and all other claims, counterclaims, defenses, rights of set-off, demands and liabilities whatsoever but, for the avoidance of doubt, excluding any claims or causes of action for gross negligence or willful misconduct (individually, a "**Pre-Petition Released Claim**" and collectively, "**Pre-Petition Released Claims**") of every name and nature, known or unknown, suspected or unsuspected, both at law and in equity, which Bon Worth, or any of its respective successors, assigns, or other legal representatives may now or hereafter owns, holds, has or claims to have against the Releasees or any of them for, upon, or by reason of any nature, cause or thing whatsoever which arises at any time on or prior to the Ratification Closing Date, including, without limitation, for or on account of, or in relation to, or in any way in connection with the Credit Agreement, as amended and supplemented through the date hereof, and the other Loan Documents.

**8.2**    Release of Post-Petition Claims. Upon the Payment in Full of all of the Indebtedness, in consideration of the agreements of Crossroads contained herein and the making of any Revolving Loans by Crossroads, Bon Worth covenants and agrees to execute and deliver

HTPL: 739735v5

in favor of Crossroads a valid and binding termination and release agreement, in form and substance satisfactory to Crossroads.

**9.**    **CONDITIONS PRECEDENT**.

The amendments, representations and warranties, covenants, defaults and all other agreements and obligations contained in Sections 1 through 8 of this Ratification Agreement shall only become effective upon the satisfaction (or waiver) of all of the following conditions precedent:

**9.1**    Bon Worth shall have complied in full with the notice and other requirements of the Bankruptcy Code in a manner reasonably acceptable to Crossroads and its counsel, with respect to the Interim Financing Order) and Crossroads shall have received such evidence thereof as it shall reasonably require;

**9.2**    no trustee or examiner with expanded powers shall have been appointed or designated with respect to Bon Worth;

**9.3**    the Interim Financing Order has been duly entered, is valid, subsisting and continuing and has not been vacated, reversed, or modified by any order of the Bankruptcy Court (other than as consented to by Crossroads) and is not subject to any stay pending appeal;

**9.4**    the execution and delivery of this Ratification Agreement to be delivered in connection herewith by Bon Worth and Crossroads in form and substance satisfactory to Crossroads;

**9.5**    The Interim Financing Order shall provide that Crossroads holds perfected, first priority security interests in and liens upon the Collateral (subject to the Pre-Petition Permitted Liens and the Carve-Out).

**9.6**    Other than the Existing Defaults (as set forth on Exhibit D to this Ratification Agreement) and Bankruptcy Events, no Event of Default shall have occurred or be existing under any of the Loan Documents, as modified pursuant hereto, and assumed by Bon Worth; and

**9.7**    The receipt by Crossroads of an Acknowledgement and Consent of Guarantor, duly executed by David Herman and William Red, (i) consenting to the terms of this Ratification Agreement and (ii) ratifying their existing Validity Guaranty.

**9.8**    The Merchant Coterie Subordination Agreement shall have been entered into by Crossroads and Merchant Coterie

**10.**    **ADDITIONAL CONDITIONS PRECEDENT TO ALL LOANS.**

In addition to the satisfaction of the conditions under Section 9 of this Ratification Agreement, the following are conditions to Crossroads' obligation to extend further loans, advances or other financial accommodations to Bon Worth pursuant to the Credit Agreement:

14

**10.1**    with respect to further credit after expiration of the Interim Financing Order, on or before the expiration of the Interim Financing Order, the Bankruptcy Court shall have entered the Permanent Financing Order;

**10.2**    requests for further credit shall be for purposes and in amounts in accordance with the Budget (subject to the variances permitted under Section 5.3(c) of the Ratification Agreement);

**10.3**    subject to the Financing Order, all fees and expenses required to be paid to Crossroads pursuant to the Ratification Agreement and the Credit Agreement, as amended thereby, shall have been paid or shall be paid concurrently with the making of the Loans after the Ratification Closing Date; and

**10.4**    other than the Existing Defaults and Bankruptcy Events, no Default or Event of Default shall have occurred or be existing under any of the Loan Documents, as amended, supplemented or otherwise modified pursuant this Ratification Agreement and assumed by Bon Worth.

## 11.    **MISCELLANEOUS**.

**11.1**    Amendments and Waivers.  Neither this Ratification Agreement nor any other instrument or document referred to herein or therein may be changed, waived, discharged or terminated orally, but only by an instrument in writing signed by the party against whom enforcement of the change, waiver, discharge or termination is sought.

**11.2**    Further Assurances.  Bon Worth shall, at its expense, at any time or times duly execute and deliver, or shall use its best efforts to cause to be duly executed and delivered, such further agreements, instruments and documents, and do or use its best efforts to cause to be done such further acts as may be reasonably necessary or proper in Crossroads' opinion to evidence, perfect, maintain and enforce the security interests of Crossroads, and the priority thereof, in the Collateral and to otherwise effectuate the provisions or purposes of this Ratification Agreement, any of the other Loan Documents or the Financing Order.

**11.3**    Counterparts.  This Ratification Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original, but all of which shall together constitute one and the same agreement.

**11.4**    Costs and Expenses.  Subject to the terms of the Financing Order, Bon Worth shall pay to Crossroads on demand, as part of the Obligations, all reasonable costs and expenses that Crossroads pays or incurs in connection with the negotiation, preparation, consummation, administration, enforcement, and termination of this Ratification Agreement and the other Loan Documents and the Financing Order.  Crossroads is hereby authorized to charge any amounts payable hereunder directly to the loan account(s) maintained by Crossroads with respect to Bon Worth.

**11.5**    Effectiveness.  This Ratification Agreement shall become effective upon the execution hereof by Bon Worth and Crossroads, the entry of the Interim Financing Order, and the satisfaction of the conditions set forth in Section 9 and 10 above.

15

IN WITNESS WHEREOF, the parties hereto have caused this Ratification Agreement to be duly executed as of the day and year first above written.

**COMPANY:**

**BON WORTH, INC.**

By:_____
Name: _____
Title: _____

**CROSSROADS FUNDING I, LLC**

By:_____
Name: _____
Title: _____

HTPL: 739735v5

EXHIBIT A
to
RATIFICATION AND AMENDMENT AGREEMENT

**SUMMARY BUDGET**

(see attached)

EXHIBIT B
to
RATIFICATION AND AMENDMENT AGREEMENT

**Form of Interim Financing Order**

(see attached)

EXHIBIT C
to
RATIFICATION AND AMENDMENT AGREEMENT

**Form of Merchant Coterie Subordination Agreement**

EXHIBIT D
to
RATIFICATION AND AMENDMENT AGREEMENT

**Existing Defaults**

Section 7.2 of the Credit Agreement