FILED & JUDGMENT ENTERED
Steven T. Salata

September  6  2019

Clerk, U.S. Bankruptcy Court
Western District of North Carolina

_George R. Hodges_
George R. Hodges
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF NORTH CAROLINA
## ASHEVILLE DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| BON WORTH, INC., | ) | Case No. 19-10317 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| _____ ) | | |

## FINAL ORDER GRANTING DEBTOR'S EMERGENCY MOTION OF DEBTOR-IN-POSSESSION FOR INTERIM AND FINAL ORDERS (I) AUTHORIZING THE DEBTOR-IN-POSSESSION (A) TO ENTER INTO POST-PETITION LOANS WITH CROSSROADS FUNDING I, LLC AND (B) TO USE CASH COLLATERAL AND (II) GRANTING RELATED RELIEF

On August 16, 2019, Bon Worth, Inc., the chapter 11 debtor and debtor in possession herein

(the "Debtor"), filed its *Emergency Motion Of Debtor-In-Possession For Interim And Final Orders*

*(I) Authorizing The Debtor-In-Possession (A) To Enter Into Post-Petition Loans With Crossroads*

*Funding I, LLC And (B) To Use Cash Collateral And (II) Granting Related Relief* [Doc. #16] (the

"Motion"), pursuant to  §§ 105, 361, 362, 363, 364(c)(1), 364(c)(2) and 364(d) of title 11 of the

United States Code (the "Bankruptcy Code") and Rules 2002, 4001, and  9014 of the Federal Rules

of Bankruptcy Procedure (the "Bankruptcy Rules"), requesting, among other things:

(1)     authorization for the Debtor to obtain senior post-petition financing from Crossroads Funding I, LLC ("Crossroads"), in accordance with the Credit Agreement (as defined below) with Crossroads, as ratified and amended by the Ratification and Amendment Agreement dated August 22, 2019 (the "Ratification Agreement"), a copy of which is attached as **Exhibit 3** to the Motion;

(2)     authorization for the Debtor to remit collections, asset proceeds and payments to Crossroads for application first to all Pre-Petition Indebtedness (as defined below) until such obligations are fully repaid in accordance with the Credit Agreement, and then to the repayment of all Post-Petition Obligations (as defined in the Ratification Agreement) in accordance with the Credit Agreement, the interim order [Doc. #42] (the "Interim Order") and this order (the "Final Order");

(3)     authorization for the Debtor to (i) grant valid, enforceable, non-avoidable and fully perfected first priority security interests to Crossroads on substantially all of the Debtor's assets pursuant to sections 364(c)(2) and 364(d)(1) of the Bankruptcy Code, subject to the Carve Out (as defined below) and (ii) grant superpriority administrative claim status pursuant to § 364(c)(1) of the Bankruptcy Code with respect to all Post-Petition Obligations;

(4)     effective upon entry of this Final Order (as defined below), the waiver of the Debtor's right to assert claims to surcharge against the Collateral (as defined below) pursuant to § 506(c) of the Bankruptcy Code; and

(5)     the modification of the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of this Final Order to the extent hereinafter set forth.

On August 21, 2019 at 11:00 a.m., an interim hearing (the "Interim Hearing") on the Motion was held before the Honorable George Hodges, United States Bankruptcy Judge for the Western District of North Carolina.  On September 3, 2019 at 10:00 a.m. a final hearing (the "Final Hearing") on the Motion was held.  Appearances at the Final Hearing are noted in the record.  Counsel for Gettysburg Outlet Center CMBS, LLC, the landlord ("Landlord") under the lease of the Debtor's retail location in Gettysburg, Pennsylvania (the "Gettysburg Lease"), stated an

informal objection to the relief requested in the Interim Order to the extent that, inter alia, the Motion sought to create a lien on the debtor's interest, if any, in the Gettysburg Lease, which is resolved on the terms presented by counsel at the Interim Hearing and incorporated herein. The Court has reviewed and considered the Motion, the declarations and other documents filed in support thereof, any pleadings or other documents filed in opposition thereto, the arguments and representations of counsel at the Interim Hearing and the Final Hearing, and any evidence presented at the Interim Hearing and Final Hearing. Based on that review and consideration and for the reasons stated on the record.

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**

A.    **Petition Date.**    On August 16, 2019 (the "Petition Date"), the Debtor filed a voluntary petition under chapter 11 of the Bankruptcy Code. The Debtor continues to operate its business and manage its affairs as a debtor in possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code.

B.    **Jurisdiction and Venue.**    The Court has jurisdiction of this proceeding pursuant to 28 U.S.C. §§ 157(b) and 1334. The Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (D) and (M). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

C.    **Notice.**    Notice of Final Hearing [Doc. #45] and the relief requested in the Motion was served as reflected in the proof of service [Doc. #46]. The Debtor has represented that it has served all parties known by the Debtor to assert liens or security interests in the assets of the Debtor. The Court finds and concludes that the notice given by the Debtor to the foregoing persons (the "Noticed Parties") constitutes due and sufficient notice and complies with Bankruptcy Rule 4001.

D.    **Debtor's Acknowledgments and Agreements.**    Without prejudice to the rights of any creditors' committee appointed in this case under Section 1102 of the Bankruptcy Code (the "Committee") or other parties-in-interest as and to the extent set forth in Section 22 of this Final Order, the Debtor admits, stipulates, acknowledges and agrees that:

3

(i)     **Credit Agreement.**    Prepetition, Crossroads provided the Debtor with a credit facility pursuant to that certain Loan and Security Agreement dated February 21, 2019, as assigned by that Assignment Agreement dated as of February 25, 2019 (and with all amendments thereto, the "Credit Agreement" and collectively, with all other prepetition documents and agreement(s) executed and/or delivered in connection therewith or related thereto at any time prior to the Petition Date, as amended, the "Loan Documents"). Copies of the operative Loan Documents are available upon reasonable request.

(ii)    **Pre-Petition Indebtedness.**    As of August 16, 2019, the Debtor owed Crossroads an aggregate principal amount of approximately $739,826.26 plus interest, fees and other amounts due per the terms of the Loan Documents (collectively, the "Pre-Petition Indebtedness", as such term is defined in the Ratification Agreement).   The Pre-Petition Indebtedness constitutes allowed, legal, valid, binding, enforceable and non-avoidable obligations of the Debtor.  The Pre-Petition Indebtedness is not subject to any offset, defense, counterclaim, avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or any other applicable law.  The Debtor does not possess, shall not assert, hereby forever releases, and is forever barred from bringing any claim, counterclaim, setoff or defense of any kind, nature or description which would in any way affect the validity, enforceability and non-avoidability of any of the Pre-Petition Indebtedness or liens and security interest securing the same described in clause (D)(iii) below.

(iii)   **Pre-Petition Collateral.**    As of the Petition Date, the Pre-Petition Indebtedness was fully secured pursuant to the Loan Documents by valid, perfected, enforceable and non-avoidable first-priority security interests and liens granted by the Debtor to Crossroads under the Loan Documents, upon all of the Pre-Petition Collateral[1] (as defined in the Ratification Agreement), subject only to certain liens and security interests specifically permitted under Section 7.14.1 of the Pre-Petition Credit Agreement that are (1) valid, perfected and non-avoidable security interests, liens or encumbrances existing as of the Petition Date, and (2) senior in priority to, and have not been or are not subject to being subordinated to, Lender's liens on and security interests in the Pre-Petition Collateral under the Pre-Petition Financing Agreements or otherwise avoided,

---

[1]"Pre-Petition Collateral" means all of the Debtor's "Collateral" (as defined in the Credit Agreement) as of immediately prior to the Petition Date.

and, in each instance, only for so long as and to the extent that the indebtedness secured by such liens, security interests, and/or encumbrances existing as of the Petition Date remains outstanding (hereinafter referred to as the "Permitted Liens").  The Debtor does not possess and will not assert any claim, counterclaim, setoff or defense of any kind, nature or description which would in any way affect the validity, enforceability and non-avoidability of any of Crossroads' liens, claims or security interests in the Pre-Petition Collateral.

(iv)    **Proof of Claim.**  The acknowledgment by the Debtor of the Pre-Petition Indebtedness and the liens, rights, priorities and protections granted to or in favor of Crossroads in respect of the Pre-Petition Collateral as set forth herein and in the Loan Documents shall be deemed a timely filed proof of claim on behalf of Crossroads.

E.    **The Need for Post-Petition Financing.**  The Debtor does not have sufficient available sources of working capital, including cash collateral, to operate its businesses in the ordinary course of business without the financing requested in the Motion.  The Debtor's ability to purchase inventory, maintain business relationships with its vendors, suppliers and customers, to pay its employees, and to otherwise fund its operations is essential to the Debtor's continued viability and the Debtor's ability to maximize the value of the assets of its estate (the "Estate").  The ability of the Debtor to obtain sufficient working capital, liquidity and inventory through the proposed post-petition financing arrangements as set forth in the Interim Order, the Final Order, the Credit Agreement, and other Crossroads DIP Loan Documents (defined below) is vital to the preservation and maintenance of the going concern value of the Debtor.

F.    **No Credit on More Favorable Terms.**  The Debtor is unable to obtain financing on terms more favorable than the terms offered by Crossroads, and is unable to obtain sufficient unsecured credit allowable as an administrative expense under §§ 364(a), 364(b), or 503(b)(1) of the Bankruptcy Code.  The Debtor is also unable to obtain secured credit allowable under sections §§ 364(c)(1), 364(c)(2) or 364(c)(3) of the Bankruptcy Code.

G.    **Budget.**  The budget (the "Budget") attached as **Exhibit 5** to the Motion has been thoroughly reviewed by the Debtor and its management and sets forth, among other things, the projected cash receipts and disbursements of the Debtor for the period covered thereby.  The Debtor represents that the Budget is achievable in accordance with the terms of the Loan

5

Documents and this Final Order and will allow the Debtor to operate administratively solvent at all times covered thereby.  Crossroads is relying upon the Debtor's compliance with the Budget (subject to certain variances permitted under Section 5.3 of the Ratification Agreement (the "Permitted Variances")), the other Crossroads DIP Loan Documents, and this Final Order in determining to enter into the post-petition financing arrangements provided for herein.

H.    **Business Judgment and Good Faith Pursuant to § 364(e).**  The terms of the Crossroads DIP Loan Documents and this Final Order are fair, just and reasonable under the circumstances, are ordinary and appropriate for secured financing to the Debtor, reflect the Debtor's exercise of its prudent business judgment consistent with its fiduciary duties, and are supported by reasonably equivalent value and fair consideration.  The terms and conditions of the Loan Documents and this Final Order have been negotiated in good faith and at arms' length between the Debtor and Crossroads with both parties represented by counsel.  Any credit extended under the terms of this Final Order shall be deemed to have been extended in good faith by Crossroads, as that term is used in § 364(e) of the Bankruptcy Code.

I.    **Good Cause.**  The relief granted in this Final Order is necessary and appropriate, and is in the best interest of and will benefit the Debtor, its creditors and its Estate, as its implementation will, among other things, provide the Debtor with the necessary liquidity to (1) allow the Debtor to operate its business in the same manner in which it operated pre-petition, (2) minimize any potential disruption to the Debtor's business and on-going operations, (3) provide reassurance to the Debtor's vendors, and (4) preserve and maximize the value of the Debtor's Estate.

J.    **Immediate Entry.**  Sufficient cause exists for immediate entry of this Final Order pursuant to Bankruptcy Rules 4001(c)(2).

Based upon the foregoing, and after due consideration and good cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.    **Motion Granted.**  The Motion is granted to the extent provided in this Final Order. Any and all objections to the entry of this Final Order are overruled or resolved as set forth in this Final Order.  This Final Order shall become effective immediately upon entry.

2.      **Authorization to Borrow and Use Loan Proceeds.**  The Debtor is hereby authorized and empowered to immediately borrow and obtain Advances and to incur indebtedness and other Post-Petition Obligations (as defined in the Ratification Agreement), up to an aggregate amount equal to the sum of (i) 120% of all disbursements for the Financing Period (as defined below) in the "Total Disbursements" line item of the Budget, plus (ii) all interest, costs, and fees, accrued or accruing under the Credit Agreement and other Loan Documents, all pursuant to the terms and conditions of this Final Order, the Credit Agreement and the other Loan Documents during the period commencing on the date of this Final Order through and including the date on which the financing expires or terminates in accordance with the Loan Documents (the "Financing Period").   Subject to the terms and conditions contained in this Final Order and the Loan Documents and unless otherwise consented to by Crossroads, the Debtor shall use the proceeds of the Advances, and other credit and financial accommodations provided by Crossroads under the Credit Agreement and the other Loan Documents solely for payment of expenses provided for in the Budget (subject to the Permitted Variances) and amounts owing to Crossroads in accordance with the terms and conditions of the Loan Documents and this Final Order.

3.      **Crossroads DIP Loan Documents.**  The Debtor is authorized to enter into the Ratification Agreement and such additional documents, instruments, or agreements including, without limitation, the Merchant Coterie Subordination Agreement (as defined in the Ratification Agreement), as may be required or requested by Crossroads to implement the terms or effectuate the purposes of this Final Order, (collectively, with the Credit Agreement, as amended by the Ratification Agreement, the other Loan Documents and the Merchant Coterie Subordination Agreement, as the same now exist or may hereafter be amended, the "Crossroads DIP Loan Documents").   The terms and conditions of the Crossroads DIP Loan Documents are hereby approved and the Debtor is authorized and directed to comply with and perform all of the terms and conditions contained therein and in this Final Order.  The Crossroads DIP Loan Documents constitute valid and binding obligations of the Debtor, enforceable against the Debtor and any other party thereto in accordance with the terms of such agreements, documents and this Final Order.   No obligation, payment, transfer or grant of security under the Crossroads DIP Loan Documents or this Final Order shall be stayed, restrained, voidable, or recoverable under the Bankruptcy Code or under any applicable law (including, without limitation, under § 502(d) of the Bankruptcy Code), or be subject to any defense, reduction, setoff, recoupment or counterclaim.

7

4.    **Payment of Pre-Petition Debt.**  The Debtor is authorized to repay all Pre-Petition Indebtedness in accordance with the Crossroads DIP Loan Documents and this Final Order.

5.    **Payments and Application of Payments.**  The Debtor is authorized to make all payments and transfers of Estate property to Crossroads as provided for, permitted and/or required under the Crossroads DIP Loan Documents, which payments and transfers shall not be avoidable or recoverable from Crossroads under §§ 547, 548, 550, 553 or any other section of the Bankruptcy Code, or by reason of any other claim, charge, assessment, or other liability, whether by application of the Bankruptcy Code, or by reason of any other claim, charge, assessment, or other liability, whether by application of the Bankruptcy Code, other law or otherwise.   All proceeds of the Collateral received by Crossroads, or any other payments received by Crossroads, may be applied or deemed to be applied by Crossroads, in its discretion, first to the repayment in full of the Pre-Petition Indebtedness, and then in repayment of the Post-Petition Obligations.

6.    **Continuation of Pre-Petition Procedures.**   All pre-petition practices and procedures in accordance with the Crossroads DIP Loan Documents for the payment and collection of proceeds of the Collateral (as defined herein), the turnover of cash, the delivery of property to Crossroads, including lockbox or blocked depository bank account arrangements or credit card processing arrangements, are hereby approved and shall continue without interruption and may be modified in ways that are not material upon the written agreement of Crossroads and the Debtor. The Debtor shall continue to be authorized to use funds deposited into its account at Bank of America so long as no Default or Event of Default under the Crossroads DIP Loan Documents has occurred and is continuing, and such use is in line with the Debtor's pre-petition practices and procedures, and in accordance with the Crossroads DIP Loan Documents.

7.    **Post-Petition Lien Granting**.  To secure the prompt payment and performance of any and all Post-Petition Obligations of whatever kind, nature or description, absolute or contingent, now existing or hereafter arising, Crossroads shall have, and is hereby granted, effective as of the Petition Date, valid and perfected first-priority security interests and liens, superior to all other liens, claims or security interests that any creditor of the Debtor's Estate may have (but subject to the Carve-Out (as defined below)), in and upon all of the Collateral.  For the avoidance of doubt, "Collateral" shall not include any property recovered as a result of transfers

or obligations avoided or actions maintained or taken pursuant to (among others) Sections 542, 544, 545, 547, 548, 549, 550, 551, 552 and 553 of the Bankruptcy Code (the "Avoidance Actions") without a Final Order granting such relief.

8.    **Lien Priority in Collateral.**  The liens and security interests of Crossroads granted under the Crossroads DIP Loan Documents and this Final Order in the Collateral securing all Post-Petition Obligations shall be first and senior in priority to all other interests and liens of every kind, nature and description, whether created consensually, by an order of the Court or otherwise, including, without limitation, liens or interests granted in favor of third parties, including Merchant Coterie under the Merchant Coterie DIP Agreement, in conjunction with §§ 363, 364 or any other section of the Bankruptcy Code or other applicable law; provided, however, that Crossroads' liens on and security interests in the Collateral shall be subject only to (a) Permitted Liens in the Collateral and (b) the Carve-Out (defined below).

9.    **Post-Petition Lien Perfection.**  This Final Order shall be sufficient and conclusive evidence of the priority, perfection and validity of the post-petition liens and security interests granted herein, effective as of the Petition Date, without any further act and without regard to any other federal, state or local requirements or law requiring notice, filing, registration, recording or possession of the Collateral, or other act to validate or perfect such security interest or lien, including without limitation, control agreements with any financial institution(s) or other depository account consisting of Collateral.

10.    **Superpriority Administrative Expenses.**  For all Post-Petition Obligations now existing or hereafter arising pursuant to this Final Order, the Crossroads DIP Loan Documents or otherwise, Crossroads is granted an allowed senior superpriority administrative claim pursuant to § 364(c)(1) of the Bankruptcy Code, having priority in right of payment over any and all other obligations, liabilities and indebtedness of the Debtor (other than the Carve-Out), whether now in existence or hereafter incurred by Debtor, and over any and all administrative expenses or priority claims of the kind specified in, or ordered pursuant to, inter alia, §§ 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 364(c)(1), 546(c), 726, 1113 or 1114 of the Bankruptcy Code (other than the Carve-Out), whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed superpriority administrative

claim shall be payable from and have recourse to all pre-petition and post-petition property of the Debtor and all proceeds thereof (the "DIP Loan Superpriority Claim").

11.    **Carve-Out.**  For purposes of this Final Order, the term "Carve-Out" means (a) the unpaid Allowed Professional Fees (defined below) and expenses in an amount not to exceed (i) up to $70,000.00 for the Debtor's proposed restructuring counsel, Horack, Talley, Pharr & Lowndes P.A., being the same as the aggregate amount of the Professional Fee Payments deposited into such professional's trust account in accordance with the terms herein and the Budget, (ii) up to $95,000.00 for the Debtor's proposed financial advisors, The Finley Group, being the same as the aggregate amount of the Professional Fee Payments deposited into such professional's trust account in accordance with the terms herein and the Budget, and (iii) $35,000.00 for the professionals retained by any Creditors' Committee that may be appointed in this case, (b) all allowed administrative expenses pursuant to 28 U.S.C. § 156(c) for fees required to be paid to the Clerk of the Bankruptcy Court and pursuant to 28 U.S.C. § 1930(a)(6) for fees payable to the Clerk of the Bankruptcy Court, (c) the Trailing Employee Expenses (defined below), and (d) the unpaid Allowed Professional Fees occurred from and after the occurrence of an Event of Default in an aggregate amount not to exceed $35,000.00, which professional fee reserve shall be divided as follows:  (i) up to $15,000.00 for Allowed Professional Fees of Horack, Talley, Pharr & Lowndes, P.A., (ii) up to $15,000.00 in Allowed Professional Fees of The Finley Group, and (iii) up to $5,000.00 for Allowed Professional Fees for counsel to the official committee of unsecured creditors, if any.  For the avoidance of doubt, nothing herein shall be construed to impair the ability of any party to object to the fees, expenses, reimbursement or compensation of any professional.  For purposes of this Final Order, the term "Allowed Professional Fees" shall mean the unpaid reasonable fees and expenses of professionals (i) actually incurred on or after the Petition Date and (ii) allowed at any time by a final order of the Court pursuant to §§ 326, 328, 330 or 331 of the Bankruptcy Code.  For purposes of this Final Order, the term, "Trailing Employee Expenses" shall mean that notwithstanding the termination of the DIP Facility and any use of cash collateral, following the Maturity Date the Debtor shall, to the extent set forth in the Budget, be permitted to pay all unpaid and accrued amounts payable to employees of the Debtor, including, but not limited to, unreimbursed expenses, payroll, all taxes related to such payroll and regularly scheduled contributions to the employee healthcare plan that were incurred prior to the Maturity Date.

12.    **Excluded Professional Fees.**    Notwithstanding anything to the contrary in this Final Order, neither the Carve-Out for unpaid Allowed Professional Fees (the "Professional Fee Carve-Out") nor the proceeds of Collateral, advances, or any other credit or financial accommodations provided under or in connection with the Crossroads DIP Loan Documents shall be used to pay any Allowed Professional Fees or any other fees or expenses incurred by any professional in connection with any of the following:

a.    (i)    an assertion or joinder in any claim, counter-claim, action, proceeding, application, motion, objection, defense or other contested matter seeking any order, judgment, determination or similar relief: (A) challenging the legality, validity, priority, perfection, or enforceability of the Pre-Petition Indebtedness, the Post-Petition Obligations or Crossroads' liens on and security interests in the Collateral; (B) invalidating, setting aside, avoiding or subordinating, in whole or in part, the Pre-Petition Indebtedness, the Post-Petition Obligations or Crossroads' liens on and security interests in the Collateral; or (C) preventing, hindering or delaying Crossroads' assertion or enforcement of any lien, claim, right or security interest or realization upon any Collateral in accordance with the terms and conditions of the Credit Agreement, the Crossroads DIP Loan Documents, and this Final Order;

(ii) a request to use Cash Collateral (as such term is defined in section 363 of the Bankruptcy Code), without the prior written consent of Crossroads;

b.    a request for authorization to obtain debtor-in-possession financing or other financial accommodations pursuant to section 364(c) or § 364(d) of the Bankruptcy Code, other than as provided in the Crossroads DIP Loan Documents and this Final Order, without Crossroads' prior written consent;

c.    the commencement or prosecution of any action or proceeding of any claims, causes of action or defenses against Crossroads or any of its respective officers, directors, employees, agents, attorneys, affiliates, successors or assigns, including, without limitation, any attempt to recover or avoid any claim or interest from Crossroads under chapter 5 of the Bankruptcy Code;

11

      d.     the cost of investigation into any claims by any Committee appointed against Crossroads arising under or in connection with the Crossroads DIP Loan Documents in excess of $10,000; or

      e.     any act which has or could directly, materially and adversely modify or compromise the rights and remedies of Crossroads under this Final Order, or which directly results in the occurrence of an Event of Default under the Crossroads DIP Loan Documents, or this Final Order.

      f.     At Crossroads' discretion, Crossroads may, at any time and in any increment in accordance establish a Reserve (the "Carve-Out Reserve") against the amount of Advances that would otherwise be available to Debtor in respect of the Carve-Out.

13.    **Professional Fee Payments.**  At any time prior to an Event of Default, each calendar month, the Debtor shall be authorized to deposit a portion of the proceeds from the Advances made by Crossroads to the Debtor to professionals ("Professional Fee Payments") pursuant to the Budget, but not exceeding (i) $25,000.00 in any such month, and (ii) $200,000.00 in total during the period of the initial Budget.  Each professional shall maintain such funds in their respective client trust accounts and shall not apply such funds to their fees and expenses without entry of a Court order approving such payment pursuant to a fee application.  Crossroads' liens on and superpriority and other administrative claims against those funds shall be junior and subordinate to the payment of Allowed Professional Fees that were not previously paid and that are not otherwise prohibited to be paid pursuant to the terms of this Final Order. Each professional shall be required to deliver to Crossroads and its counsel written notice of a Professional Fee Payment deposit into its client trust account, specifying the amount and date of such deposit within three (3) business days from the date it was made. Crossroads shall not have any responsibility or liability whatsoever to ensure that the Professional Fee Payments are made, nor shall Crossroads be required to make Advances to Debtor to fund the Professional Fee Payments.

14.    **Payment of Carve Out.** Crossroads shall not, under any circumstance, be responsible for the direct payment or reimbursement of any fees or disbursements of any Professionals incurred in connection with the Case under any chapter of the Bankruptcy Code, and nothing in Section 14 of this Final Order shall be construed to obligate Crossroads in any way, to

directly pay compensation to or to reimburse expenses of any professional, or to ensure that the Debtor has sufficient funds to pay such compensation or reimbursement.

15.    **Authorization to Use Cash Collateral.**  Subject to the terms and conditions of this Final Order and the Crossroads DIP Loan Documents, the Debtor is authorized to use its Cash Collateral (as defined in section 363 of the Bankruptcy Code), to which the Debtor is permitted to have access under the terms of the Crossroads DIP Loan Documents for the period commencing on the date of this Final Order and terminating upon the final day of the Financing Period.  Nothing in this Final Order shall authorize the disposition of any assets of the Debtor or its Estate outside the ordinary course of business, or Debtor's use of Cash Collateral or other proceeds resulting therefrom, except as expressly permitted in this Final Order, the Crossroads DIP Loan Documents and in accordance with the Budget (subject to the Permitted Variances).

16.    **Replacement Liens.**  As adequate protection for the diminution in value of its interests in the Collateral (including Cash Collateral), including without limitation resulting from the Debtor's use of such Collateral (including Cash Collateral), the imposition of the automatic stay, the subordination to the Carve-Out, and any other act or omission which causes diminution in the value of its interests in the Collateral (collectively, the "Diminution in Value"), Crossroads is granted pursuant to §§ 361 and 363 of the Bankruptcy Code, and solely to the extent of the Diminution in Value, valid, binding, enforceable and perfected replacement liens upon and security interests in all Collateral (the "Senior Replacement Lien").  The Senior Replacement Lien shall be junior and subordinate only to (A) the Carve-Out, and (B) Crossroads' liens on the Collateral to secure the Post-Petition Obligations, and shall otherwise be senior to all other security interests in, liens on, or claims against any of the Collateral and all rights of payment of all other parties including, without limitation, any liens and claims that may be granted to Merchant Coterie, Inc. ("Merchant Coterie") during the Case.

17.    **Replacement Liens and Section 507(b) Priority Claims.**  Subject to the Carve-Out, Crossroads is hereby granted a super-priority administrative expense claim under section 507(b) of the Bankruptcy Code in an amount equal to the Collateral Diminution.

18.    **Events of Default.**  The occurrence of any of the following events shall constitute an "Event of Default" under this Final Order: (a) the Debtor's failure to perform, in any respect,

any of its obligations under this Final Order; or (b) an "Event of Default" under the Credit Agreement or any of the other Crossroads DIP Loan Documents.

19.   **Rights and Remedies upon Event of Default.**   Upon the occurrence of and during the continuance of an Event of Default under the Crossroads DIP Loan Agreements, (a) the Debtor shall be bound by all restrictions, prohibitions and other terms as provided in this Final Order, the Credit Agreement and the other Crossroads DIP Loan Documents, and (b) Crossroads shall be entitled to declare all Obligations immediately due and payable, accelerate the Obligations, cease extending Advances to Debtor, set off any Obligations with Collateral or proceeds in Crossroads' possession, and, subject to obtaining stay relief under Section 21 below, enforce any and all other rights with respect to the Collateral. Crossroads shall have no obligation to lend or advance any additional funds to or on behalf of Debtor, or provide any other financial accommodations to Debtor, immediately upon or after the occurrence of an Event of Default.   Unless and until all of the Obligations due Crossroads have been paid in full, Merchant Coterie shall be precluded from enforcing its rights and exercising remedies with respect to any liens or claims it may be granted in the Case, as more specifically set forth in the Merchant Coterie Subordination Agreement.

20.   **Expiration of Credit Facility**. Upon the expiration of Debtor's authority to borrow and obtain other credit accommodations from Crossroads pursuant to the terms of this Final Order, the Credit Agreement, or the Crossroads DIP Loan Documents, unless an Event of Default set forth in Section 18 above occurs sooner and the automatic stay has been lifted or modified pursuant to Section 21 of this Final Order, all of the Obligations shall immediately become due and payable and Crossroads shall have no obligation whatsoever to make or extend any loans, advances, provide any financial or credit accommodations to Debtor or permit the use of Cash Collateral, subject to the conditions set forth in Section 15 of this Final Order.

21.   **Modification of Automatic Stay.**   The automatic stay provisions of section 362 of the Bankruptcy Code and any other restriction imposed by an order of the Court or applicable law are hereby modified without further notice, application or order of the Court to the extent necessary to permit Crossroads to perform any act authorized or permitted under or by virtue of this Final Order or the Crossroads DIP Loan Documents, as applicable, including, without limitation, (a) to implement the post-petition financing arrangements authorized by this Final Order and pursuant

14

to the terms of the Crossroads DIP Loan Documents, (b) to take any act to create, validate, evidence, attach or perfect any lien, security interest, right or claim in the Collateral, and (c) to assess, charge, collect, advance, deduct and receive payments with respect to the Pre-Petition Indebtedness or the Post-Petition Obligations, as applicable, including, without limitation, all interests, fees, costs and expenses permitted under the Crossroads DIP Loan Documents (subject to Paragraph 34 below) and apply such payments to the Pre-Petition Indebtedness or Post-Petition Obligations pursuant to the Crossroads DIP Loan Documents and/or this Final Order, as applicable, and (d) immediately following the expiration of the Default Notice Period, to take any action and exercise all rights and remedies provided to it by this Final Order, the Credit Agreement, the other Crossroads DIP Loan Documents or applicable law other than those rights and remedies of Crossroads against the Collateral set forth in the foregoing clauses (a), (b), and (c), which rights and remedies shall be enforceable immediately upon the occurrence of an Event of Default. In addition, subject to entry of the Final Order, and without limiting the foregoing, upon the occurrence of an Event of Default and after providing five (5) business days (the "Default Notice Period") prior written notice (the "Enforcement Notice") to (i) counsel for the Debtor, (ii) counsel for the Committee (if appointed), (iii) the Bankruptcy Administrator, and (iv) counsel for Merchant Coterie or Crossroads shall be entitled to take any action and exercise all rights and remedies provided to it by this Final Order, the Crossroads DIP Loan Documents or applicable law to proceed against and realize upon the Collateral or any other assets or properties of Debtor's estate upon which Crossroads has been, or may hereafter be, granted liens or security interests to obtain the full and indefeasible repayment of all Obligations. In any hearing regarding any exercise of rights or remedies (which hearing must take place within the Default Notice Period), the only issue that may be raised by any party in opposition thereto shall be whether, in fact, an Event of Default has occurred and is continuing, and the Debtor shall not be entitled to seek relief, including, without limitation, under section 105 of the Bankruptcy Code, to the extent such relief would in any way impair or restrict the rights and remedies of Crossroads set forth in this Final Order or the Crossroads DIP Loan Documents.  Notwithstanding anything to the contrary in this Final Order, such notice by Crossroads shall not prejudice the right of the Debtor to file a motion with the Court opposing the termination of the automatic stay on the sole basis that an Event of Default has not in fact occurred and is continuing; provided, further, that upon the filing of such motion that Crossroads shall be stayed from exercising remedies against the Collateral until the Court hears

and disposes of such motion. If the Debtor files any such motion, the same shall be expedited with a hearing or an auction, as the case may be, to take place no later than five (5) days from the date such motion is filed, subject to the availability of the Court.

22. **Objections to Pre-Petition Indebtedness.** Notwithstanding anything to the contrary in the Final Order, any action, claim, defense, complaint, motion or other written opposition (hereinafter, an "Objection") that seeks to object to, challenge, contest or otherwise invalidate or reduce, whether by setoff, recoupment, counterclaim, deduction, disgorgement or claim of any kind: (a) the existence, validity or amount of the Pre-Petition Indebtedness as of the Petition Date, or (b) the extent, legality, validity, perfection or enforceability of Crossroads' pre-petition liens and security interests in the Pre-Petition Collateral shall be properly filed with the Court by any Committee within sixty (60) calendar days from the date of appointment of the Committee by this Court upon recommendation by the Bankruptcy Administrator, or (y) by any party in interest with requisite standing within seventy-five (75) calendar days from the date of entry of the Interim Order; provided, however, that nothing herein shall permit any party to challenge the extent or validity of the Post-Petition Obligations. If any such Objection is timely and properly filed and a final, non-appealable order is entered by a court of competent jurisdiction sustaining and ordering some or all of the relief requested in such Objection, nothing in this Final Order shall prevent the Court from granting appropriate relief with respect to the Pre-Petition Indebtedness or Crossroads' pre-petition liens on the Pre-Petition Collateral. If no Objection is timely and properly filed, or if an Objection is timely and properly filed but denied, (i) the Pre-Petition Indebtedness shall be deemed allowed in full, shall not be subject to any setoff, recoupment, counterclaim, deduction or claim of any kind, and shall not be subject to any further objection or challenge by any party at any time, and Crossroads' pre-petition liens on and security interest in the Pre-Petition Collateral shall be deemed legal, valid, perfected, enforceable, and non-avoidable for all purposes and of first and senior priority, subject to only the Carve-Out, and (ii) Crossroads, and each of its respective participants, agents, officers, directors, employees, attorneys, professionals, successors, and assigns (each in its respective capacities as such) shall be deemed released and discharged from any and all claims and causes of action related to or arising out of the Loan Documents and shall not be subject to any further objection or challenge relating thereto or arising therefrom by any party at any time. Nothing contained in this Paragraph 22 or otherwise shall or shall be deemed or construed to impair, prejudice or waive any rights, claims or

protections afforded to Crossroads in connection with all post-petition Advances, and any other post-petition financial and credit accommodations provided by Crossroads to the Debtor in reliance on section 364(e) of the Bankruptcy Code and in accordance with the terms and provisions of this Final Order and the Crossroads DIP Loan Documents.

23. **Debtor's Waivers.** At all times during the Case, and whether or not an Event of Default has occurred, the Debtor irrevocably waives any right that it may have to seek further authority (a) to use Cash Collateral of Crossroads under section 363 of the Bankruptcy Code, (b) with the exception of the Merchant Coterie DIP Loan, which is subject to the Merchant Coterie Subordination Agreement, to obtain post-petition loans or other financial accommodations pursuant to section 364(c) or 364(d) of the Bankruptcy Code, other than as provided in this Final Order or as may be otherwise expressly permitted pursuant to the Crossroads DIP Loan Documents, (c) to challenge the application of any payments authorized by this Final Order as pursuant to section 506(b) of the Bankruptcy Code, or to assert that the value of the Pre-Petition Collateral is less than the Pre-Petition Indebtedness, (d) to propose, support or file a motion to sell substantially all of its assets or a plan of reorganization or liquidation that does not provide for the indefeasible payment in cash in full and satisfaction of all Obligations on the effective date of such plan in accordance with the terms and conditions set forth in the Credit Agreement, unless otherwise consented to in writing by Crossroads, or (e) to seek relief under the Bankruptcy Code, including without limitation, under section 105 of the Bankruptcy Code, to the extent any such relief would in any way restrict or impair the rights and remedies of Crossroads as provided in this Final Order and the Crossroads DIP Loan Documents or Crossroads' exercise of any such rights or remedies (other than to object to the exercise of the rights and remedies within the Default Notice Period on the grounds set forth in Section 21 of this Final Order); provided, however, that Crossroads may otherwise consent in writing, but no such consent shall be implied from any other action, inaction, or acquiescence by Crossroads.

24. **Section 506(c) Claims.** No costs or expenses of administration which have or may be incurred in this case shall be charged against Crossroads, its respective claims or the Collateral pursuant to § 506(c) of the Bankruptcy Code without the prior written consent of Crossroads, and no such consent shall be implied from any other action, inaction or acquiescence by Crossroads.

25.    **Collateral Rights.**  Until all Obligations have been indefeasibly paid and satisfied in full in accordance with the terms of the Credit Agreement and the other Crossroads DIP Loan Documents:

(a)    no party other than Crossroads shall foreclose or otherwise seek to enforce any junior lien or claim in the Collateral; and

(b)    upon and after the declaration of the occurrence of an Event of Default, other than the Existing Defaults (as defined in the Ratification Agreement), and subject to Crossroads obtaining relief from the automatic stay as provided for herein to enforce its rights and remedies against the Collateral, in connection with a liquidation of any of the Collateral, Crossroads (or any of its employees, agents, consultants, contractors or other professionals) shall have the right, at the sole cost and expense of Debtor, to: (i) enter upon, occupy and use any real or personal property, fixtures, equipment, leasehold interests or warehouse arrangements owned or leased by Debtor and (ii) use any and all trademarks, trade names, copyrights, licenses, patents or any other similar assets of Debtor, which are owned by or subject to a lien of any third party and which are used by Debtor in its businesses.

26.    **No Modification or Stay of This Final Order.**  Notwithstanding (a) any stay, modification, amendment, supplement, vacating, revocation or reversal of this Final Order, the Crossroads DIP Loan Documents or any term hereunder or thereunder, or (b) the dismissal or conversion of this case (each, a "Subject Event"), (x) the acts taken by Crossroads in accordance with this Final Order, and (y) the Post-Petition Obligations incurred or arising prior to Crossroads' actual receipt of written notice from Debtor expressly describing the occurrence of such Subject Event shall, in each instance, be governed in all respects by the original provisions of this Final Order, and the acts taken by Crossroads in accordance with this Final Order, and the liens granted to Crossroads in the Collateral, and all other rights, remedies, privileges, and benefits in favor of Crossroads pursuant to this Final Order and the Crossroads DIP Loan Documents shall remain valid and in full force and effect pursuant to section 364(e) of the Bankruptcy Code.  For purposes of this Final Order, the term "appeal", as used in section 364(e) of the Bankruptcy Code, shall be

construed to mean any proceeding for reconsideration, amending, rehearing, or re-evaluating this Final Order by this Court or any other tribunal.

27.     **Power to Waive Rights; Duties to Third Parties.**  Crossroads shall have the right to waive any of Crossroads rights under the Credit Agreement, Crossroads DIP Loan Documents, and this Final Order (the "DIP Lender Rights"), and shall have no obligation or duty to any other party with respect to the exercise or enforcement, or failure to exercise or enforce, any DIP Lender Right(s).   Any waiver by Crossroads of any DIP Lender Rights shall not be or constitute a continuing waiver.   Any delay in or failure to exercise or enforce any DIP Lender Right shall neither constitute a waiver of such DIP Lender Right, subject Crossroads to any liability to any other party, nor cause or enable any party other than the Debtor to rely upon or in any way seek to assert as a defense to any obligation owed by the Debtor to Crossroads.

28.     **Disposition of Collateral.**  During the Final Financing Period, the Debtor shall not sell, transfer, lease, return, encumber, consent to other creditors' setoff rights, or otherwise dispose of any portion of the Collateral outside the ordinary course of its business, other than pursuant to the terms of this Final Order, the Credit Agreement and the other Crossroads DIP Loan Documents, without the prior written consent of Crossroads (and no such consent shall be implied, from any other action, inaction or acquiescence by the Crossroads) and, in each case, an order of this Court.

29.     **Resolution of Informal Objection Relating to Gettysburg Lease**.  Notwithstanding anything to the contrary in the Motion or this Final Order, as agreed by Merchant Coterie and Crossroads: (a) the term "Collateral" as used herein shall not include the Debtor's interest, if any, in the Gettysburg Lease (other than to any proceeds, which may be realized if the Gettysburg Lease is assigned), and (b) MCI and Crossroads do not have the right to use or occupy the premises subject to the Gettysburg Lease absent (i) the Landlord's consent or (ii) this Court's order entered upon appropriate notice to the Landlord.

30.     **Reservation of Rights.**  The terms, conditions and provisions of this Final Order are in addition to and, except as expressly stated herein, without prejudice to the rights of Crossroads to pursue any and all rights and remedies under the Bankruptcy Code, the Crossroads DIP Loan Documents or any other applicable agreement or law, including, without limitation, rights to seek adequate protection and/or additional or different adequate protection, to seek relief

from the automatic stay, to seek an injunction, to oppose any request for use of cash collateral or granting of any interest in the Collateral, as applicable, or priority in favor of any other party, to object to any sale of assets, and to object to applications for allowance and/or payment of compensation of professionals or other parties seeking compensation or reimbursement from the Estate.

31.    **Binding Effect.**    The provisions of this Final Order and the Crossroads DIP Loan Documents, the Post-Petition Obligations, the Adequate Protection Superpriority Claim, the DIP Loan Superpriority Claim and any and all rights, remedies, privileges and benefits in favor of Crossroads, provided or acknowledged in this Final Order, and any actions taken pursuant thereto, shall be effective immediately upon entry of this Final Order notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h) and 7062, shall continue in full force and effect, and shall survive entry of any such other order, including without limitation any order which may be entered confirming any plan of reorganization, converting the case to any other chapter under the Bankruptcy Code, or dismissing the case.  Any order dismissing this case under section 1112 or otherwise shall be deemed to provide (in accordance with §§ 105 and 349 of the Bankruptcy Code) that (a) the DIP Loan Superpriority Claim and Crossroads' liens on and security interests in the Collateral and all other claims, liens, adequate protections and other rights granted pursuant to the terms of this Final Order shall continue in full force and effect notwithstanding such dismissal until the obligations under the Credit Agreement and Crossroads DIP Loan Documents are indefeasibly paid and satisfied in full, and (b) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing all such claims, liens, protections and rights.  This Final Order shall be binding upon Debtor, all parties in interest in the case and its respective successors and assigns, including any trustee or other fiduciary appointed in the case or any subsequently converted bankruptcy case of the Debtor.

32.    **No Owner/Operator Liability.**    Crossroads shall not be deemed to be in control of the operations of the Debtor or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtor (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601 et seq., as amended, or any similar federal or state statute).

33.    **Marshalling.**  In no event shall Crossroads be subject to the equitable doctrine of "marshalling" or any similar doctrine with respect to the Collateral.  Crossroads shall each be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to Crossroads with respect to proceeds, products, offspring or profits of any of the Collateral, as applicable.

34.    **Right of Setoff.**  To the extent any funds were on deposit with Crossroads as of the Petition Date, such funds are subject to rights of setoff and a lien in favor of Crossroads pursuant to §§ 506(a) and 553 of the Bankruptcy Code.

35.    **Payment and Review of Lender Fees and Expenses.**  The Debtor shall pay all fees and expenses under the Credit Agreement and, including, without limitation payment to Crossroads of the reasonable fees and expenses of Crossroads' attorneys, consultants, or other retained professionals in accordance with the Crossroads DIP Loan Documents whether, incurred before or after the Petition Date; and the Debtor shall pay all such reasonable fees and expenses within five (5) business days of delivery of a statement or invoice for such fees and expenses to the Debtor (it being understood that such statements or invoices shall not be required to be maintained in accordance with the any particular guidelines, nor shall any such counsel or other professional be required to file any interim or final fee applications with the Court or otherwise seek Court's approval of any such payments) it being understood that the Bankruptcy Administrator or any Committee, may request copies of the same and serve a written objection thereto, within five (5) business days of receipt of such invoice, with such allowance being subject to order of this Court in the event the parties cannot resolve any dispute in connection therewith.

36.    **Term; Termination.**  Notwithstanding any provision of this Final Order to the contrary, the term of the financing arrangements between Debtor and Crossroads authorized by this Final Order may be terminated pursuant to the terms of the Credit Agreement (as amended by the Ratification Agreement).

37.    **Limited Effect.**  In the event of a conflict between the terms and provisions of any of the Crossroads DIP Loan Documents and this Final Order, the terms and provisions of this Final Order shall govern, interpreted as most consistent with the terms and provisions of the Credit Agreement.

21

38.     **Objections Overruled.**  All objections to the entry of this Final Order are (to the extent not withdrawn, waived, withdrawn, or settled) hereby overruled.

39.     **Retention of Jurisdiction.**  The Court retains jurisdiction and power with respect to all matters arising from or related to the implementation or interpretation of this Final Order, the Credit Agreement and the other Crossroads DIP Loan Documents.

This Order has been signed electronically. The judge's signature and the court's seal appear at the top of the Order.                              United  States  Bankruptcy  Court