# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION

| | |
|---|---|
| In re: ) | Chapter 11 |
| ) | |
| BON WORTH, INC., ) | Case No. 19-10317 |
| ) | |
| Debtor. ) | |

**DEBTOR'S MOTION FOR ORDER (I) AUTHORIZING AND SCHEDULING PUBLIC AUCTION FOR SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS FREE AND CLEAR OF ANY AND ALL LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS; (II) APPROVING PROCEDURES FOR SUBMISSION OF QUALIFIED OVERBIDS; (III) APPROVING BID PROTECTIONS; AND (IV) APPROVING FORM AND MANNER OF NOTICE PURSUANT TO FED. R. BANKR. P. 2002**

To facilitate the sale of all or substantially all of assets of the Debtor's assets (the "Sale"), Bon Worth, Inc. (the "Debtor" or "Seller"), files this motion (the "Motion") seeking an order: (1) authorizing and scheduling a public auction (the "Auction") for the sale of substantially all of the Debtor's assets (the "Assets") free and clear of all claims, liens and encumbrances, and interests; (2) approving procedures for the submission of higher or better offers for any and all of the Assets; (3) approving bid protections; and (4) approving the form and manner of a notice of sale of assets and of assumption and assignment of executory contracts and unexpired leases. In support of this Motion, the Debtor respectfully represents as follows:

## JURISDICTION

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue of this proceeding is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b). The statutory predicates for the relief requested herein are sections 105(a), 363(b), 363(f), 363(k), and 363(m) of the Bankruptcy Code and Bankruptcy Rules 2002 and 6004.

2. No previous motion for the relief sought herein has been made to this Court.

1

3. The Court has authority to hear this matter pursuant to the General Order of Reference entered by the United States District Court for the Western District of North Carolina.

## BACKGROUND

**A. General**

4. On August 16, 2019 (the "Petition Date"), the Debtor filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code.

5. The Debtor continues in possession of its properties and the management of its business as a debtor-in-possession, pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in this chapter 11 case.

6. The Debtor is wholly owned by Kyong Kook Kim, the sole shareholder of the Debtor. The Debtor is headquartered in Hendersonville, North Carolina. The Debtor was founded in 1966 in Hendersonville, North Carolina, and is a women's retail clothing chain.

7. As of the Petition Date, the Debtor operates approximately fifty (50) retail stores. Most of these stores are located in shopping centers or other commercial retail locations. The Debtor does not own any real estate and leases all of its locations.

8. Bon Worth provides quality women's fashion clothing and accessories. The Company offers a variety of women's clothing and accessories in its stores, as well as through its online portal, www.bonworth.com.

9. The Debtor has been successful in creating a vibrant social media presence, and can provide customers with product offerings from both its physical store locations combined with its online services.

10. The Debtor's management team has a great depth of experience in the retail industry. Yisan So serves as Chief Executive Officer and David A. Herman serves as Chief

Operating Officer, respectively. In addition to this experienced management team, on March 23, 2019, the Debtor entered into an Ownership Transfer and Management Services Agreement (the "Management Agreement") with Merchant Coterie, Inc., a New York corporation ("Merchant Coterie"). Prior to the Petition Date, Merchant Coterie provided management services to the Debtor. Although Merchant Coterie did not consummate a transfer of the Debtor's ownership pursuant to the terms of the Management Agreement prior to the Petition Date, Merchant Coterie has agreed to purchase the assets of the Debtor and serve as a "Stalking Horse" purchaser pursuant to the terms of this Motion and a subsequent motion to sell the assets of the Debtor.

**B.    Assets and Secured Liabilities of the Debtor**

11. The Debtor's assets consist primarily of inventory, fixtures, furniture, equipment, accounts receivable, and the going concern value of the business including intellectual property, customer relationships and business goodwill. As of the Petition Date, the Debtor's assets, based on historical book value, totaled approximately $2,527,602.00.

12. Crossroads Funding I, LLC, a Delaware limited liability company ("Crossroads") is the Debtor's primary senior secured lender pursuant to (i) the Loan and Security Agreement (the "Credit Agreement") dated February 21, 2019, by and between the Debtor and Crossroads Financing, LLC and assigned to Crossroads pursuant to the Assignment Agreement dated as of February 25, 2019 (and the corresponding Uniform Commercial Code Financing Statements); (ii) the Ratification and Amendment Agreement (the "Ratification Agreement") dated August 22, 2019, by and between the Debtor and Crossroads; and (iii) the Subordination Agreement (the "Merchant Coterie DIP Subordination Agreement" and together with the Credit Agreement and the Ratification Agreement, the "Crossroads DIP Loan Documents"), dated August 22, 2019, by and between the Debtor, Crossroads and Merchant Coterie. The Crossroads DIP Loan Documents

evidence indebtedness from the Debtor to Crossroads in an amount up to $1,300,000.00 in accordance with a line of credit arrangement. Pursuant to the terms of the Crossroads DIP Loan Documents, the Debtor granted security for said indebtedness against substantially all of the property of the Debtor in favor of Crossroads. As of the Petition Date, the Debtor's obligations to Crossroads were in the approximate amount of $739,826.26 plus interest, fees and other amounts due under the Credit Agreement.

13. In order to assist the Debtor in remaining a viable entity pending a sale of the assets of the company, Merchant Coterie made cash advances and delivered substantial inventory to the Debtor, on credit, prior to the Petition Date at a time when the Debtor's access to trade credit was significantly constrained. The pre-petition advances provided by Merchant Coterie are subject to a subordination agreement between Crossroads and Merchant Coterie (the "Merchant Coterie Pre-Petition Subordination Agreement" and, together with the Merchant Coterie DIP Subordination Agreement, the "Subordination Agreements") pursuant to which Merchant Coterie has agreed to subordinate all of its liens and claims, whether arising before or after the Petition Date, to the pre- and post-petition loans and liens of Crossroads. As of the Petition Date, the Debtor's secured obligations to Merchant Coterie were in the principal amount of $100,000.00 pursuant to that certain Promissory Note and Security Agreement each dated August 8, 2019. In addition, prior to the Petition Date, the Debtor was indebted to Merchant Coterie in the amount of $2,869,728.70 on an unsecured basis.

14. On August 16, 2019, the Debtor filed an Emergency Motion of Debtor-in-Possession for Interim and Final Orders (I) Authorizing the Debtor-in-Possession (A) to Enter into Post-Petition Loans with Crossroads Funding I, LLC and (B) to Use Cash Collateral and (II) Granting Related Relief [Docket No. 16] (the "Crossroads Financing and Cash Collateral

4

Motion").

15. On August 20, 2019, the Debtor filed an Emergency Motion of Debtor-in-Possession for Interim and Final Orders (I) Authorizing the Debtor-in-Possession (A) to Enter into Post-Petition Loans with Merchant Coterie, Inc. and (B) to Use Cash Collateral and (II) Granting Related Relief [Docket No. 33] (the "Merchant Coterie Financing and Cash Collateral Motion").

16. On August 23, 2019, the Court entered Interim Orders granting the Crossroads Financing and Cash Collateral Motion [Docket No. 42] and the Merchant Coterie Financing and Cash Collateral Motion [Docket No. 43].

17. On September 6, 2019, the Court entered Final Orders granting the Crossroads Financing and Cash Collateral Motion [Docket No. 68] and the Merchant Coterie Financing and Cash Collateral Motion [Docket No. 69].

### C. Current Condition of the Debtor and Proposed Asset Sale

18. At present, the Debtor is operating in reliance on the inventory substantially all of which is provided by Merchant Coterie. The payment and delivery terms provided to the Debtor from Merchant Coterie are far more favorable to the Debtor than are typical for the industry. Specifically, market standard terms require a percentage down payment at the time of an order and payment of the remaining amount due within a few days following delivery. The Debtor has not been able to find a supplier other than Merchant Coterie who will provide inventory to the Debtor on even these terms. Rather, the Debtor has only been able to find alternates to the Merchant Coterie inventory from companies which would require full payment up front. Merchant Coterie has only agreed to make the accommodations to the Debtor's inventory payments in order to facilitate the sale and stalking horse bid contemplated herein.

19. The Debtor is operating in reliance on the DIP financing provided by both Merchant

Coterie and Crossroads.

20. Without the DIP financing provided by both Merchant Coterie and Crossroads, the Debtor would be unable to continue its operations as a going concern.

21. In order to maximize the value of the estate for its creditors, the Debtor has determined that a sale of the business as a going concern is the best course of action.

22. The Debtor has accepted an offer from Merchant Coterie whereby Merchant Coterie or an affiliate of Merchant Coterie would purchase certain assets of the Debtor, subject to receipt of higher bids at auction as described below. Subject to Court approval, The Finley Group has been retained in this case on behalf of the Debtor as its financial advisor. The Debtor requests that The Finley Group be permitted and empowered to contact potential purchasers and to market the Debtor's assets as a going concern operation for sale. The Debtor submits that engagement in a more expensive and lengthy, formal, broker-led marketing program is unnecessary in this case due to the Debtor's and The Finley Group's knowledge of potential strategic buyers in the industry, the identification of a stalking horse bidder, and the pressing need to close any potential sale.

## RELIEF REQUESTED

23. By this Motion, the Debtor requests the entry of an order (the "Bidding Procedures Order"): (a) authorizing and scheduling a public auction (the "Auction") for the sale of the Assets to one or more bidders, free and clear of all liens, claims, encumbrances and interests, (b) approving procedures set forth herein for the submission of higher or better offers for any and all of the Assets, (c) approving bid protections, and (d) approving the form and manner of the Notice of Sale substantially in the form attached hereto as **Exhibit A** (the "Sale Notice"). In addition, the Debtor requests that the Bidding Procedures Order be deemed effective immediately upon entry by waiving the fourteen (14) day stay under Bankruptcy Rule 6004(h) and 6006(d).

**THE PROPOSED BIDDING PROCEDURES**

24. The proposed term sheet (the "Term Sheet") submitted by Merchant Coterie is attached hereto as **Exhibit B**.

25. The Debtor will follow this filing with the submission of a final Asset Purchase Agreement by and between the Debtor and Merchant Coterie (the "Asset Purchase Agreement"), the final terms of which will be finalized following the submission of the Debtor's Schedules and Statement of Financial Affairs.

26. The Debtor requests that the Court authorize the Debtor, in accordance with the Bidding Procedures, to solicit initial overbids for the Assets. The Debtor will hold the Auction at which Qualified Overbidders (as defined below) whose Initial Overbids (as defined below) meet the requirements of the Bidding Procedures may compete to offer that bid which the Debtor will determine to be the highest or best bid for the Assets. Such highest or best bid will be submitted to the Court for approval at the hearing (the "Sale Hearing") to approve the Debtor's Sale Motion.[1]

**A.  Access to Confidential Information**

27. To obtain access to Confidential Information, potential Overbidders (as defined below) must execute and deliver to Matthew W. Smith, The Finley Group, 212 S. Tryon Street, Suite 1050, Charlotte, NC 28202, Proposed Financial Advisor to the Debtor the confidentiality agreement in the Form attached hereto as **Exhibit C** (the "Confidentiality Agreement").

**B.  Overbidder Requirements**

28. To participate in the Auction, prospective bidders other than Merchant Coterie (such bidders will hereafter be referred to as "Overbidders") must submit to the Debtor an "Initial

---

[1] The Debtor will prepare and file a Motion for Order Pursuant to Sections 105(a), 363, and 365 of the Bankruptcy Code (A) Authorizing the Sale of Substantially All of the Debtor's Assets Free and Clear of Liens, Claims, Encumbrances, and Interests, (B) Approving the APA, and (C) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection with Such Sale (the "Sale Motion").

7

Overbid" in conformance with this Paragraph 28 by no later than the Objection/Overbid Deadline. Any such Overbidder must:

    a.    Comply with the foregoing requirements regarding access to confidential information; namely, prior to receipt of any Confidential Information, execute the Confidentiality Agreement;

    b.    Serve its Initial Overbid on (a) counsel to the Debtor, Offit Kurman P.A., 301 S. College Street, Suite 2600, Charlotte, North Carolina 28202; Attn: Paul Baynard, Esq., E-mail: paul.baynard@offitkurman.com; amy.hunt@offitkurman.com; (b) counsel for Merchant Coterie, Hamilton, Stephens, Steele + Martin, PLLC, 525 N. Tryon St., 14th Floor, Charlotte, North Carolina 28202; Attn: Glenn C. Thompson, E-Mail: gthompson@lawhssm.com; mraubach@lawhssm.com; (c) counsel for Crossroads, Otterbourg, P.C., 230 Park Avenue, New York, New York 10169-0075; Steven B. Soll, Esq., E-Mail: ssoll@otterbourg.com and Hull & Chandler, P.A., 1001 Morehead Square Drive, Suite 450, Charlotte, North Carolina 28203; Felton Parrish, Esq., E-Mail: fparrish@lawyerscarolina.com; and (d) the Bankruptcy Administrator, 402 West Trade Street. Suite 200, Charlotte, North Carolina 28202-1669, Attn: Shelley K. Abel, in a manner such that the Initial Overbid is actually received no later than 5:00 P.M. Eastern Time on Wednesday, October 16, 2019 (the "Objection/Overbid Deadline");

    c.    Include with its Initial Overbid: (i) an executed copy of a definitive sale document having, with the exception of the Purchase Price, terms and conditions substantially similar and no less favorable than those contained in the Term Sheet; (ii) a version of the Overbidder's definitive sale document marked to show changes from the Term Sheet; and (iii) a disclosure of all parties participating in the Initial Overbid;

    d.    Make its Initial Overbid Bid for an amount equal to or greater than the

8

aggregate of the sum of (i) the Purchase Price, plus (ii) a premium of not less than One Hundred Fifty Thousand Dollars ($100,000);

  e. Provide that its Initial Overbid is irrevocable until the closing of the transaction contemplated by the Sale Motion, whether or not such bid is chosen as the Prevailing Bidder or Back-Up Bidder (defined below), unless such Initial Overbid is expressly rejected by the Debtor in accordance with the provisions of the Bidding Procedures;

  f. Include evidence, satisfactory to the Debtor, of the Overbidder's good faith within the meaning of section 363(m) of the Bankruptcy Code, and the Overbidder's ability to pay the requisite cure and to provide "adequate assurance of future performance" with respect to any Assumed Contracts within the meaning of Section 365 of the Bankruptcy Code;

  g. Include in its Overbid a deposit equal to not less than One Hundred Ninety Thousand Dollars ($190,000);

  h. Agree in writing that the prospective bidder is willing to close the sale no later than: (i) up to fifteen (15) days after the entry of order approving the sale, or (ii) November 15, 2019;

  i. Agree in writing that, in the event the prospective Overbidder's bid is the winning bid, but the Overbidder fails to close the Sale, the $190,000 deposit shall be forfeited and shall be released to the Debtor to fund operational and administrative expenses while it seeks to close a sale with another buyer; and

  j. Agree in writing to be a Back-Up Bidder (as defined below).

29. The Debtor reserves the right to: (i) determine, in its discretion, which offer to purchase the Assets should be recommended to the Court; (ii) reject any offers that the Debtor determines to be inadequate, insufficient or otherwise unsatisfactory; (iii) conduct an auction on

9

or prior to the Sale Hearing; or (iv) adjourn the Sale Hearing by announcing such adjournment at the Sale Hearing.

30. In the event that one or more timely, conforming Initial Overbids are submitted by a person who has satisfied the requirements of Paragraph 28 of this Motion, the Debtor may, in its discretion, determine whether the Overbidder constitutes a qualified overbidder (each a "Qualified Overbidder"). Notwithstanding the foregoing, Merchant Coterie is deemed to be a Qualified Overbidder.

### C.     The Auction

31. If there is at least one Qualified Overbidder in addition to Merchant Coterie, the Debtor shall conduct an Auction on Friday October 18, 2019 at 10:00 A.M. at the offices of The Finley Group, 212 S. Tryon Street, Suite 1050, Charlotte, North Carolina 28202. The Auction shall be an open auction such that each successive bid, including any further markups of the APA, will be made known to each other Qualified Overbidders at the time the Qualified Overbid is submitted. Merchant Coterie shall be permitted to credit its bid by the amount of the Breakup Fee (as defined below).

32. The Auction would continue thereafter in overbid increments of at least $100,000.00 until the highest bid is reached. The Court, with input from the Debtor, shall confirm the bidder with the highest and best offer as the winner of the Auction (the "Prevailing Bidder").

33. In evaluating competing bids, the Debtor will give primary consideration to the net effect on the Debtor's estate and the certainty and amount of funds which will thereby become available for distribution to the Debtor's creditors. Other factors may be considered as well.

### D.     The Breakup Fee

34. Merchant Coterie has submitted a stalking horse bid to establish a floor for further

bidding on the Assets. If Merchant Coterie, as the stalking horse bidder, is not the successful bidder because the Debtor received a higher or otherwise better offer, the Debtor will have the benefit from the floor established by Merchant Coterie's proposal as well as the inventory and funds delivered by Merchant Coterie as a DIP Lender and vendor. Pursuant to Section 105 of the Bankruptcy Code, the Court has expansive equitable powers to fashion any order or decree which is in the interest of preserving or protecting the value of the Debtors assets, such as structuring an orderly sale process with a stalking horse. *See In re Chinichian,* 784, F.2d 1440, 1443 (9th Cir. 1986).

35. Upon the first to occur of (a) the Bankruptcy Court entering an order approving the transaction contemplated herein to an entity other than Merchant Coterie, (b) the date the Debtor files a chapter 11 plan contemplating the sale or retention of the Assets by the Debtor in a manner substantially inconsistent with the terms of the Term Sheet, or (c) the confirmation of a plan of reorganization of the Debtor by the Bankruptcy Court that does not include the transactions contemplated by this Motion, then within thirty (30) days after entry of the operative Order, the Debtor shall release to Merchant Coterie the amounts then due to Merchant Coterie for all inventory delivered to the Debtor or ordered to be delivered to the Debtor post-petition (the "Breakup Fee") from the proceeds generated by a transaction with a party other than Merchant Coterie. For the avoidance of doubt, the Breakup Fee shall not include the amounts that the Debtor owed Merchant Coterie on a pre-petition basis.

36. The Debtor is authorized without further Bankruptcy Court action to pay any amounts that become due and payable to Merchant Coterie pursuant to this Motion (including, without limitation, the Breakup Fee) and that pursuant to section 507(a)(2) of the Bankruptcy Code, Merchant Coterie shall have an allowed administrative expense priority claim for such

amounts.

**E.    The Back-Up Bid**

37.    If there is an Auction, the Debtor may select and designate a back-up bid which will be automatically approved if the Prevailing Bidder fails to close ("Back-Up Bid").

38.    The maker of a Back-Up Bid (the "Back-Up Bidder") shall automatically be deemed to have been approved to purchase the Assets in accordance with the order entered by the Court approving the Sale without further order of the Bankruptcy Court, and the closing of the Sale with the Back-Up Bidder shall occur two business days after the Prevailing Bidder gives notice that it is, or is determined to be, unable to close the Sale, but in no event later than November 20, 2019, unless approval for an extension of the Closing Date is agreed to in writing by the Debtor.

**PROPOSED PROCEDURES RELATING TO THE ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

39.    The Term Sheet does not contemplate the assignment and assumption of any executory contracts or unexpired leases, except for the Assumed Contracts, if any, set forth on a schedule appended to the Term Sheet. In connection with the sale of the Assets to a potential Overbidder, such Overbidder may request the Debtor to assume and assign one or more executory contracts, in addition to, or in lieu of the executory contracts that Merchant Coterie is prepared to assume as Assumed Contracts under the Term Sheet. Section 365 of the Bankruptcy Code authorizes a debtor to assume and assign its executory contracts and unexpired leases subject to approval of the Bankruptcy Court, provided that the debtor has exercised its sound business judgment in seeking such assumption and assignment and any defaults under such contracts or leases are cured and adequate assurance of future performance is provided.

40.    Any cure amounts owed under the Assumed Contracts, if any, shall be paid by the successful bidder. To avoid the time and expense of addressing cure issues on a piecemeal basis,

the Debtor requests a procedure (described below) to establish the cure amounts, if any, that are owed under the Assumed Contracts. Adequate assurance of future performance depends on the facts and circumstances of each case, but should be given "practical pragmatic construction." *See In re Carlisle Homes, Inc.,* 103 B.R. 524, 538 (Bankr. D.N.J. 1989). As necessary, the successful bidder also must demonstrate to the Court that it can provide adequate assurance of future performance in connection with the Assumed Contracts, or will have obtained any necessary consents of the counter-parties to the Assumed Contract.

41. The Debtor proposes that the following procedures be used with respect to the executory contracts and unexpired leases:

   A. The Debtor will provide a list of all executory contracts and unexpired leases related to the Assets and the cure amount owed under each such contract and lease. The Debtor will serve a copy of the Bidding Procedures on the counter-party to each such contract or lease.

   B. Any counter-party that disputes the cure amount set forth on the exhibit or the proposed assumption and assignment of such contract must file with the Court and serve on the following parties on or before the Objection/Overbid deadline: (a) Offit Kurman P.A., 301 S. College Street, Suite 2600, Charlotte, North Carolina 28202; Attn: Paul Baynard, Esq., E-mail: paul.baynard@offitkurman.com; amy.hunt@offitkurman.com; (b) Hamilton, Stephens, Steele + Martin, PLLC, 525 N. Tryon St., 14th Floor, Charlotte, North Carolina 28202; Attn: Glenn C. Thompson, E-Mail: gthompson@lawhssm.com; mraubach@lawhssm.com; (c) Otterbourg, P.C., 230 Park Avenue, New York, New York 10169-0075; Steven B. Soll, Esq., E-Mail: ssoll@otterbourg.com and Hull & Chandler, P.A., 1001 Morehead Square Drive, Suite 450, Charlotte, North Carolina 28203; Felton Parrish, Esq., E-Mail: fparrish@lawyerscarolina.com; and (d) the Bankruptcy Administrator, 402 West Trade Street. Suite 200, Charlotte, North Carolina 28202-1669, Attn: Shelley K. Abel.

   C. The failure to submit an objection will bar such counter-party to an executory contract or lease from asserting any other cure amount, disputing the cure amount, disputing whether any Qualified Overbidders have provided sufficient adequate assurances of future performance, or otherwise contesting the assumption and assignment of such executory contracts.

   D. To the extent any objection is filed, such objection will be addressed at the Sale Hearing.

42. The Debtor asserts that the relief sought is fair and reasonable under the circumstances and will provide all counter-parties to executory contracts and unexpired leases with the ability to contest the Debtor's calculations as to cure costs. Additionally, these procedures will allow the Court and the counter-parties to have a hearing with respect to and evaluate any purchaser's ability to provide adequate assurances of future performance. Accordingly, the Debtor requests at this time that the Court grant authorization for it to proceed with the procedures with respect to the executory contracts and unexpired leases, including those that become Assumed Contracts outlined above. All Qualified Overbidders shall be required to provide adequate assurance of future performance with respect to each Assumed Contract at the Sale Hearing, provided that the corresponding counter-party to such Assumed Contract makes such a timely request.

### Notice of Bidding Procedures, the Auction and the Proposed Sale

43. In accordance with Bankruptcy Rule 6004, sales of property rights outside the ordinary course of business may be by private sale or public auction. The Debtor has determined, in consultation with its advisors, that the sale of the Debtor's assets pursuant to the Bidding procedures will enable it to obtain the highest or best offer for the Debtor's Assets and is in the best interests of the Debtor, its estate and creditors. For the reasons set forth in this Motion, the Debtor wishes to proceed to the Auction and the Sale Hearing on Friday, October 18, 2019 and Wednesday, October 23, 2019, respectively, and requests this Court to authorize the Debtor to provide shortened notice of the proposed Auction.

44. The Debtor proposes to give notice of the Bidding procedures, the Auction and the proposed Sale by first class mail, as soon as practicable after the date that the Court enters an Order granting this Motion, by serving the Sale Notice substantially in the form of **Exhibit A** attached

14

hereto, upon (i) the Bankruptcy Administrator; (ii) counsel for Crossroads; (iii) counsel for Merchant Coterie; (iv) the top 20 unsecured creditors in this case; and (v) Image Solutions, LLC and GreatAmerica Financial Services Corporation.

45. The Debtor submits that the notice provided and described herein is reasonable and appropriate and will be more than adequate to ensure that all interested parties have the opportunity to bid for assets of the Debtor and/or to object to the relief sought at the Sale Hearing.

## BASIS FOR RELIEF

### A. Conducting an Auction Pursuant to the bidding procedures is in the Best Interests of the Debtor's Estate and Creditors

46. The Debtor believes that the Auction and proposed Bidding Procedures will promote active bidding from seriously interested parties and will identify the best and highest offer(s) available for the Assets. The proposed Bidding Procedures will allow the Debtor to conduct the Auction in a controlled, fair and open fashion that will encourage participation by financially capable bidders who demonstrate the ability to close a transaction. The Debtor believes that the Bidding procedures are (i) sufficient to encourage bidding for the Assets, (ii) consistent with other procedures previously approved by this Court, and (iii) appropriate under the relevant standards governing auction proceedings and bidding incentives in bankruptcy proceedings.

### B. The Overbid Provisions Should Be Approved

47. The Auction and overbid provisions of this Motion are proper. Bankruptcy courts which have addressed the propriety of overbid provisions have generally approved the use of overbid increments as limitations on subsequent bidders. See, e.g., *In re Crown Corp.*, 679 F.2d 774, 775-76 (9th Cir. 1982). The overbid contemplated in the Motion is reasonable and is consistent with the type of overbid provisions approved in other cases. The subsequent bid increments for the Auction are designed to eliminate nuisance bidding, while at the same time not

to be overly burdensome to any serious bidders.

### C. The Break-Up Fee Should Be Approved

48. The Break-Up Fee contemplated in this Motion is proper. It is well-established that break-up fees may be approved in a bankruptcy case. See *Official Committee of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.)*, 147 B.R. 650 (S.D.N.Y. 1992). Bankruptcy courts have approved bidding incentives comparable to the Break-Up Fee under the "business judgment rule," which proscribes judicial second guessing of the actions of a corporate principal taken in good faith and in the exercise of rational judgment. Bidding protections have become an established practice in chapter 11 cases for sales of assets pursuant to section 363. See, e.g., *In re J.A. Jones, Inc.*, Case No. 03-33532 (Bankr. W.D.N.C. 2003) (approving termination fee).

49. In this case, the proposed Break-Up Fee is the product of good faith, arm's length negotiations between the Debtor and Merchant Coterie. The proposed Break-Up Fee is fair and reasonable and is intended to compensate the initial bidder for serving as a stalking horse, thereby encouraging the participation of other bidders for the assets to be sold. It is especially appropriate in a situation such as this where circumstances limit the period of time available for potential bidders to conduct due diligence. The Break-Up Fee is reasonable in relation to the size of the proposed sale.

### D. The Fourteen Day Stay Should Not Apply

50. Bankruptcy Rule 6004(h) provides in pertinent part that an "order authorizing the use, sale, or lease of property is stayed until the expiration of 14 days after the entry of the order, unless the court orders otherwise." The Debtor requests that any Order approving the sale of assets in accordance with the Bidding Procedures be effective immediately upon entry of such Order and

that the 14-day stay not apply. Since the Debtor is a retail business that has its revenues increase during the holiday season, any potential purchaser will want to close immediately after the entry of an order approving the sale and not wait until after the expiration of the 14 day period in order to have more time to prepare the business for the holiday season. The Debtor submits that cause therefore exists to waive the stay period.

## Notice

51. The Debtor has served notice of this Motion on (i) the Bankruptcy Administrator; (ii) counsel for Crossroads; (iii) counsel for Merchant Coterie; (iv) the top 20 unsecured creditors in this case and (v) Image Solutions, LLC and GreatAmerica Financial Services Corporation.

WHEREFORE, the Debtor respectfully requests that the Court enter an order (i) authorizing and scheduling the Auction for the Sale of the Assets, including, without limitation, the acquired Assets, free and clear of all liens, claims, encumbrances and interests, (b) approving the form of Bidding Procedures as contained in this Motion; (c) approving the Break-Up Fee, and (d) approving the Sale Notice in substantially the form attached hereto as **Exhibit A** and the Confidentiality Agreement in substantially the form attached hereto as **Exhibit C**; and (e) granting the Debtor such other and further relief as is just and proper.

Dated: September 10, 2019

                                              OFFIT KURMAN P.A.

                                              /s/ Amy P. Hunt
                                              Paul R. Baynard
                                              N.C. State Bar No. 15769
                                              Amy P. Hunt
                                              N.C. State Bar No. 34166
                                              301 S. College Street, Ste. 2600
                                              Charlotte, NC 28202-6006
                                              Telephone: 704-377-2500
                                              Facsimile: 704-714-7935
                                              E-mail: paul.baynard@offitkurman.com
                                              E-mail: amy.hunt@offitkurman.com
                                              Proposed Counsel to the Debtor

4821-0807-3124, v. 7